**Margie H. LANIER, Plaintiff**

**v.**

**I.B.M. CORPORATION, Defendant**

**No. 02 CIV. 4563(SCR).**

United States District Court, S.D. New York.

March 8, 2004.

376

Victoria De Toledo, Casper & de Toledo LLC, Stamford, CT, for Plaintiff.

Kevin G. Lauri, Steven D. Hurd, Jackson Lewis, LLP, New York, NY, for Defendant.

## MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

## I. *BACKGROUND:*

A. Procedural History:

I.B.M. Corporation (the "Defendant") has made a motion for summary judgment ("Defendant's Motion") in connection with the above referenced matter on three main grounds: (1) the decision to eliminate the diversity HR professional position was not discriminatory; (2) IBM's evaluation of plaintiff's performance was not discriminatory and (3) the plaintiff cannot prove that she was not hired for two different positions (Team Lead and Basic Blue Facilitator) at IBM because of her race. These claims form the basis of Margie H. Lanier's (the "Plaintiff") complaint. The Plaintiff has opposed the Defendant's Motion ("Plaintiff's Opposition") and the Defendant filed a reply ("Reply"). The Defendant's Motion is in connection with an action commenced by the Plaintiff on June 14, 2002 alleging that the Defendant discriminated against her on the basis of her

race [1] in violation of Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. § 2000 et seq. and 42 U.S.C. § 1981 (as amended).

## B. FACTUAL HISTORY:

Based upon the submitted motions, exhibits, depositions, affidavits and statements of undisputed material facts by the Plaintiff and Defendant, the Court finds that the following facts are not in dispute.

The Plaintiff has worked for the Defendant since January 22, 1973. In 1998, the Plaintiff applied for a position as the Senior Human Resources Professional on the Management Development Team ("MD Team"), working in the Multicultural and Diversity Group. The Plaintiff only interviewed with one individual, Robert MacGregor, the Manager of the MD Team and was hired by Mr. MacGregor. The MD Team is responsible for deploying training programs for new managers, which training programs consist of three types: (1) Basic Blue, a management training program; (2) Diversity Imperative Workshops, diversity training for managers and Diversity Awareness Workshops, diversity training for employees ("Diversity Programs"); and (3) Shades of Blue, a multicultural training program. Mr. MacGregor, as the MD Team manager is responsible for the deployment of diversity and multicultural programs and training of new managers.

1. Ms. Lanier is African–American.

2. Due to the nature of the Plaintiff's complaint, it should be noted that Ms. Owens is African–American.

3. Due to the nature of the Plaintiff's complaint, it should be noted that Mr. Childs is African–American.

4. IBM has three satisfactory ratings for performance evaluations: "1"—extraordinary

In 1998 and 1999 the Plaintiff worked for the Team Lead for the diversity and multicultural group, Linda Owens [2], who was also hired by Mr. MacGregor. During this time, the Plaintiff's primary responsibilities were tasks relating to the administration of the Diversity Programs, including scheduling and coordination with the outside consultants who conducted the programs. At some point during 1999, Ted Childs [3], the Vice President of Diversity and Work Life, decided that the Defendant should be at the forefront of offering multicultural training. By the end of 1999, 80% of the Defendant's managers had participated in diversity training. Mr. Childs decided that the MD Team should increase its emphasis on multicultural training to help the Defendant's international business. In 1998 the budget allocation for the Diversity Programs was $6.8 million and the MD Team deployed 855 diversity workshops. In 1999, the budget was $3.7 million and the MD Team deployed 261 workshops. In 2000, the budget was $1.8 million and the MD Team deployed 123 workshops. Mr. MacGregor requested $1.6 million for 2001 and was originally allocated $1.1 million, which was later reduced to $750,000.

In January of 2000, Mr. MacGregor completed a performance review for the Plaintiff and gave her a rating of "2" for her 1999 performance, which indicated that Plaintiff had "achieved/exceeded most commitments." [4] Additionally, in January of 2000, Ms. Owens resigned. [5] Soon after-

performance; "2"—achieved/exceeded most commitments; and "3"—achieved some/most commitments.

5. The parties do not agree as to the reason for Ms. Owens's departure. The Plaintiff contends that Ms. Owens left because she "did not feel that she had MacGregor's support." (See Plaintiff's Deposition, page 66).

ward, Mr. MacGregor placed a job posting to replace Ms. Owens, which posting indicated that the Defendant was seeking a candidate with management experience, a IBM "Band 10" level employee[6], and international employment experience. The Plaintiff discussed the position with Mr. MacGregor who reiterated the job posting preference for someone with experience working and/or living in other countries. The Plaintiff asserts that she did not apply for the position based on this conversation. Nancy Curl[7] was hired for the "Team Lead" position in December 2000. Ms. Curl had experience in management, including human resource issues, had expressed an interest in working with multicultural programs, and had previous work experience in Asia and Europe. During her deposition the Plaintiff was asked whether she was alleging that Mr. MacGregor did not hire her because of her race. (Plaintiff's Deposition, Page 185). The Plaintiff responded, "I'm unable to determine that because I don't know what other candidates he looked at or considered for the job." (Plaintiff's Deposition, Page 185).

Later in 2000, the Shades of Blue program, was introduced to train the Defendant's employees about the cultures and customs of countries where the Defendant operates. In February 2000, the Plaintiff volunteered to become a Shades of Blue "Facilitator." Additionally, the Plaintiff continued to be responsible for deploying the Diversity Programs and for updating the "Going Global" website.

At the Plaintiff's 2001 performance review, for her 2000 performance, she was given a rating of "3." Mr. MacGregor informed the Plaintiff that the "3" rating was based the fact that the Going Global website had not progressed as expected, that the Plaintiff needed additional development as a Facilitator and that she had conflicts with other members of the MD Team.[8] The Plaintiff was dissatisfied with her rating and brought a complaint first to Mr. MacGregor's supervisor, Nancy Lewis, Director of IBM Management Development, who did not find that the evaluation should be revised. Next, the Plaintiff brought her complaint to Donna Riley, Acting Vice President for Management Development. Ms. Riley did not change the rating, but did request that Mr. MacGregor amend some of the language in the evaluation. The Plaintiff was still not satisfied with the performance evaluation and elected to grieve her evaluation through IBM's Panel Review Process. In April 2001, that Panel ruled that the Plaintiff's overall evaluation should be changed from "3" to "2." The evaluation was changed and the Plaintiff received a bonus and salary increase, which she became entitled to for a "2" rating.

In late April 2001, Mr. MacGregor proposed allowing the Plaintiff to facilitate some of the Diversity Programs, which previously had been conducted by outside vendors. Additionally, Mr. MacGregor asked the Plaintiff to develop a plan to become qualified to facilitate both the Shades of Blue and Diversity Programs by July 1, 2001. In May 2001, the Plaintiff

6.  IBM "Bands" are job classifications that denote the level of experience, job responsibility and pay. Bands 1–9 are non-executive and Band 10 is managerial.

7.  Due to the nature of the Plaintiff's complaint, it should be noted that Ms. Curl is Caucasian.

8.  It should be noted that the Plaintiff disputes the correctness of the Mr. MacGregor's assertions, but does not dispute that these were the stated reasons for the performance rating.

was offered to facilitate several Shades of Blue programs and she turned down those opportunities. As a result of the budget reductions, the MD Team elected not to earmark money to deploy Diversity Programs for 2001 or to prepare any updates for 2002. According to the Defendant, these cuts to the Diversity Programs together with the Plaintiff's decision not to facilitate Shades of Blue programs created a situation where a majority of the Plaintiff's job responsibilities were eliminated. Mr. MacGregor and the Plaintiff met on several occasions during the spring and summer of 2001 to encourage the Plaintiff to look for another position within IBM. Mr. MacGregor and other individuals working for the Defendant attempted to find the Plaintiff a position with another department. Additionally Mr. MacGregor submitted the Plaintiff's name and credentials to the HR Advisory Forum and submitted her resume for open positions.[9] The Plaintiff applied for, but did not get, several positions in other departments but does not contend that race was a factor in the selection process for any such position.

On October 31, 2001, the Plaintiff applied for a manager training position as a Basic Blue Facilitator reporting to Mr. MacGregor. That job posting "preferred" "current or recent first line or middle management experience" and proficiency levels in a number of management skills, including an understanding of IBM practices, policies, leadership competencies and management theory. The Defendant claims that the Plaintiff was not hired for this position because she lacked recent management experience and had "failed" as a Facilitator, which claims are disputed by the Plaintiff. After the Plaintiff was not hired for this position, the Plaintiff asked for an independent review of the selection process. Both Nancy Lewis, Director of IBM Management Development, and Ted Hoff, Vice President of Learning, independently reviewed the process and found that the Plaintiff was not qualified for the Facilitator position. Rose Ann Bove[10] was hired for the position.

In October 2001, the Plaintiff was transferred to a temporary position in the "Diversity and Work Life" group. This temporary assignment ended in February 2002, at which time the Plaintiff was assigned to work as an HR Professional on the "Corporate Learning Evaluation and Investment" team, where she continues to work. The Plaintiff's "Band 9" status, salary and benefits have not decreased as a result of her change of assignments. Furthermore, she received raises and bonuses in 2001, 2002 and 2003.

## II. STANDARD OF REVIEW:

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when "there is no genuine issue as to any material fact [.]" Fed.R.Civ.P. 56(c). Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden falls on the moving party who is required to "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v.*

---

9. While the record shows that Mr. MacGregor did take some actions to find the Plaintiff another employment opportunity, the Plaintiff alleges, and some of the Defendant's employees concede, that he could have done more on her behalf.

10. Due to the nature of the Plaintiff's complaint, it should be noted that Ms. Bove is Caucasian.

*Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets its burden, the burden shifts to the party opposing summary judgment to set forth "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The party responding to a motion for summary judgment that is supported by affidavits must present specific evidence in support of the contention that there is a genuine dispute as to a material fact in the case. *St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir.2000). Conclusory statements, mere conjecture, hearsay or speculation by the party resisting summary judgment cannot defeat the motion. *Bickerstaff v. Vassar College*, 196 F.3d 435, 452 (2d Cir.1999). In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts ... The nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir.2002) (emphasis in original), quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). While it is true that a court is generally required to draw all reasonable inferences and resolve all ambiguities in favor of the party opposing summary judgment, *see Matsushita Elec. Indus. Co.* at 586, 106 S.Ct. 1348, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. *ANALYSIS:*

### A. STANDARD OF REVIEW FOR DISCRIMINATION ACTIONS:

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1) (1994). Courts decide cases brought under Title VII using the three-step analytical framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and refined in later cases. *See e.g. St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Stern v. Trustees of Columbia University*, 131 F.3d 305, 311–12 (2d Cir. 1997).

Under *McDonnell Douglas* and its progeny, the plaintiff/employee bears the initial burden of producing evidence sufficient to support a prima facie case of discrimination by demonstrating membership in a protected class, qualification for the position, adverse employment action, and circumstances giving rise to an inference of discrimination. *McDonnell Douglas* at 802, 93 S.Ct. 1817. If the plaintiff satisfies this burden, the defendant/employer must "articulate a legitimate, clear, specific, and non-discriminatory reason" for its adverse employment decision. *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir.1995). If the defendant makes such a showing, the burden shifts back to the plaintiff to show that the defendant's proffered reason is pretextual and that the defendant was more likely motivated, in whole or in part, by discrimination. *See Hicks* at 515–16, 113 S.Ct. 2742; *Stern* at 312. The Second Circuit has specifically held that the standard principles governing motions for summary judgment apply at each step of this analysis. *Stern* at 312; *see* Fed.R.Civ.P. 56(c).

The establishment of a prima facie case creates a presumption that the employer unlawfully discriminated against the em-

ployee. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). To rebut such presumption, the defendant must offer an explanation that the adverse employment actions were taken for a legitimate, nondiscriminatory reason. *Hicks* at 507, 113 S.Ct. 2742. Such explanation must clearly set forth, by reliance on admissible evidence, reasons for the defendant's actions "which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Burdine* at 254–55, 101 S.Ct. 1089.

If a defendant successfully rebuts the presumption raised by the prima facie case, the presumption "drops from the case" and the plaintiff must demonstrate that the proffered reason was not a pretext and that the true reason for the decision was the plaintiff's race. *Hicks* at 507–08, 113 S.Ct. 2742; *Burdine* at 255–56, 101 S.Ct. 1089. If a plaintiff's evidence was barely sufficient to establish a prima facie case, it may not be sufficient to establish discrimination after the defendant has proffered a neutral rationale for its action. *Fisher v. Vassar College*, 114 F.3d 1332, 1339 (2d Cir.1997) (en banc), cert. denied, 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998). The Supreme Court has articulated that "a reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *Hicks* at 515, 113 S.Ct. 2742. Further, when an "employer has met its burden of production 'the factual inquiry proceeds to a new level of specificity.'" *Hicks* at 516, 113 S.Ct. 2742 (citing *Burdine* at 255, 101 S.Ct. 1089). The *Hicks* majority interpreted this "new level of specificity" to refer to the change in inquiry from a "few generalized factors that establish a prima facie case to the specific proofs and rebuttals of discriminatory motivation the parties have introduced." *Hicks* at 516, 113 S.Ct. 2742. In order to defeat a motion for summary judgment after a showing by the defendant of a nondiscriminatory reason, the plaintiff must submit admissible evidence showing circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination. *Stern* at 312.

The Plaintiff in the case at bar has alleged racial discrimination in connection with (a) an employment evaluation, (b) the termination of her permanent position with the MD Team at IBM and (c) a discriminatory failure to promote her for two different positions within IBM. Generally, in order to establish a prima facie case of discrimination under Title VII, a plaintiff must present evidence that: (1) she belongs to a protected class; (2) her job performance was satisfactory; (3) she suffered an adverse employment action; and (4) the action occurred under conditions giving rise to an inference of discrimination. *See McDonnell Douglas* at 802, 93 S.Ct. 1817; *Stern* at 311–12. In order to establish a prima facie case for discriminatory failure to promote or hire, the plaintiff must show that: (1) she applied for an available position; (2) she was qualified for the position; and (3) even though qualified, she was rejected under circumstances which give rise to an inference of discrimination. *Gomez v. Pellicone*, 986 F.Supp. 220, 228 (S.D.N.Y.1997) (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *de la Cruz v. New York City Human Resources Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir.1996)) (internal quotations omitted). An inference of discrimination may arise if the position was filled by an individual that is not a member of the plaintiff's protected class. *Id.*

In the context of a motion for summary judgment a trial court must be cautious about granting summary judgment to an employer when the employer's intent is at issue. *Gallo v. Prudential Residential Services, L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Due to the fact that writings supporting a plaintiff's claim of intentional discrimination "are rarely, if ever, found among an employer's corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Id.* at 1224. Notwithstanding the foregoing, mere conclusory statements, conjecture, hearsay or speculation by the plaintiff cannot defeat the motion. *Bickerstaff* at 452.

## B. THE DECISION TO ELIMINATE THE DIVERSITY HR PROFESSIONAL POSITION:

### (1) Plaintiff's Prima Facie Case:

■ Generally, in order to establish a prima facie case of discrimination under Title VII, a plaintiff must present evidence that: (1) she belongs to a protected class; (2) her job performance was satisfactory; (3) she suffered an adverse employment action; and (4) the action occurred under conditions giving rise to an inference of discrimination. *See McDonnell Douglas* at 802, 93 S.Ct. 1817; *Stern* at 311–12. The Defendant has not disputed that the Plaintiff belongs to a protected class, that her job performance was satisfactory or that the action occurred under conditions giving rise to an inference of discrimination; accordingly, we will accept those elements as established with respect to the Plaintiff's prima facie case. With respect to the decision to eliminate the diversity profession position, the only element the Defendant has challenged is whether or not the Plaintiff suffered an adverse employment action.

■ A plaintiff is subjected to an adverse employment action where he or she endures a "materially adverse change" in the terms and conditions of employment. *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir.2000) (citing *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 446 (2d Cir.1999)). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." *Galabya*, 202 F.3d at 640 (internal quotations and citation omitted). In *Galabya*, the Second Circuit found that the plaintiff failed to show that his transfer was "to an assignment that was materially less prestigious, materially less suited to his skills and expertise, or materially less conducive to career advancement," and upheld the district court's grant of summary judgment in favor of the employer. *Galabya*, 202 F.3d at 641.

■ Taking the facts in a light most favorable to the Plaintiff, the Plaintiff has suffered adverse employment action. The Defendant contends that the elimination of Plaintiff's position with the diversity team did not result in either the loss of her job with IBM or any loss of title, level of responsibility or compensation. (Defendant's Motion, Page 17). The Plaintiff counters by asserting that while she has not been terminated, she has no permanent job or assignment and does not have the same opportunity for advancement. (Plaintiff's Opposition, Page 25). It is certainly arguable that the Plaintiff's current assignment is "materially less prestigious", "materially less suited to her skills" and/or "materially less conducive to career advancement." Unlike the situation in *Galabya*, this court finds that the "adverse

employment action" element of the Plaintiff's claim is satisfied for the purpose of establishing a prima facie case of discrimination. Accordingly, the Court finds that the Plaintiff has satisfied its burden of a prima facie case for the purposes of this motion for summary judgment.

### (2) Defendant's Non–Discriminatory Reason:

■ Having determined that the Plaintiff has established a prima facie case, the burden shifts to the Defendant to rebut such presumption and to articulate an explanation, which show the adverse employment actions were taken for a legitimate, nondiscriminatory reason. In the case at bar, the Defendant has offered a budgetary justification as the non-discriminatory reason for the elimination of Plaintiff's position. The Defendant's argument is that the MD Team's budget was consistently reduced from 1998–2001.[11] During that same time period there was a shift in focus from diversity to multicultural training. Because of these factors the managers of the MD Team were forced to allocate finite resources toward the multicultural training. The Defendant's non-discriminatory justification is sufficient to rebut the Plaintiff's prima facie case.

### (3) Defendant's Reason a Pretext:

■ Having found the Defendant's non-discriminatory justification sufficient to re-

but the presumption of discrimination, the burden shifts back to the Plaintiff to produce evidence from which a jury could infer that the Defendant's reliance on such justification was pretextual and that its real reason for eliminating her position was racial discrimination. In order to do so, the Plaintiff must show (1) that the Defendant's proffered reason is false and (2) discrimination was the real reason. See Hicks at 515, 113 S.Ct. 2742. In the context of summary judgment, the Second Circuit has held that in order to defeat summary judgment, the defendant must submit admissible evidence showing circumstances that would permit a rational finder of fact to find that the defendant's conduct was motivated in whole or in part by discrimination. Stern at 312.

■ With respect to the Defendant's proffered reason, the Plaintiff has not disputed that the budget was reduced or that there was a shift in focus from diversity towards multicultural training, but does dispute the assertion that she was not interested in the multicultural program. The Plaintiff's argument is that the Defendant, specifically Mr. MacGregor[12], forced the Plaintiff to focus on the Diversity Programs, rather than the multicultural programs and then allocated more money to the multicultural programs, which were run by Ms. Curl, than the Diversity Pro-

11. As set forth in the "Factual History" section above, by the end of 1999, 80% of the Defendant's managers had participated in diversity training. Mr. Childs decided that the MD Team should increase its emphasis on multicultural training to help the Defendant's international business. In 1998 the budget allocation for the Diversity Programs was $6.8 million and the MD Team deployed 855 diversity workshops. In 1999, the budget was $3.7 million and the MD Team deployed 261 workshops. In 2000, the budget was $1.8 million and the MD Team deployed 123 workshops. Mr. MacGregor requested $1.6 mil-

lion for 2001 and was originally allocated $1.1 million, which was later reduced to $750,000.

12. Although the Plaintiff's complaint names IBM Corporation as the only defendant, all of the allegations of discrimination, with respect to the elimination of the HR Professional position, the evaluation of the Plaintiff's performance and the jobs the Plaintiff did not get, involve Mr. MacGregor, who is not named individually as a defendant in this action.

grams, which were run by the Plaintiff, for the purpose of eliminating the Plaintiff's position rather than Ms. Curl's position. (Plaintiff's Opposition, Page 21). This argument fails on a number of levels. First, Ms. Curl's position as Team Lead and the Plaintiff's position as HR Professional are different in both qualification and scope. Second, the Diversity Programs and multicultural programs were not interchangeable. Finally, and most persuasive, is the fact, supported by a number of documents produced by the Defendant, that the decisions regarding the allocation of funding were not made by Mr. MacGregor, who is the alleged discriminator, but Mr. Childs, who is African–American. (See Defendant's Motion, Exhibits M, N and R). The Plaintiff conceded in her deposition that it was Mr. Childs and not Mr. MacGregor who made these decisions, (Plaintiff's Deposition, Page 239) and that she was speculating that it was Mr. MacGregor, rather than Mr. Childs, who made the decision regarding the allocation of funds. (Plaintiff's Deposition, Page 166–67). The Plaintiff fails to satisfy the first requirement of *Hicks,* showing that the Defendant's proffered, non-discriminatory reason was untrue.

With respect to the second requirement of *Hicks,* the Plaintiff has not offered any evidence whatsoever of discriminatory motivation by the Defendant on the basis of race, only conclusory allegations. In order to defeat summary judgment, the Plaintiff must do more than make conclusory allegations. *See Bickerstaff* at 452. Such allegations may be sufficient to defeat a motion to dismiss, but the standard of review on a motion for summary judgment is different. As set forth in *Stern,* in order to defeat a motion for summary judgment in connection with a discrimination action, the plaintiff must submit admissible evidence that could give a rational finder of fact a basis to find that the defendant's decision was motivated by racial discrimination. The Plaintiff has not provided any evidence for such basis.

The Defendant's motion for summary judgment with respect to the cause of action for the elimination of the Plaintiff's position with the MD Team is granted.

### C. EVALUATION OF THE PLAINTIFF'S PERFORMANCE:

#### (1) **Plaintiff's Prima Facie Case:**

As set forth above, in order to establish a prima facie case of discrimination under Title VII, a plaintiff must present evidence that: (1) she belongs to a protected class; (2) her job performance was satisfactory; (3) she suffered an adverse employment action; and (4) the action occurred under conditions giving rise to an inference of discrimination. *See McDonnell Douglas* at 802, 93 S.Ct. 1817; *Stern* at 311–12. The defendant has not disputed that the Plaintiff belongs to a protected class, accordingly, we will accept that element as established.

This court first addresses the issue of adverse employment action. The general standards for determining an "an adverse employment action" are set forth in Section III(B)(2) above. Additionally, while it is true that adverse employment actions are not limited to job termination or the reduction of wages and benefits, "not every unpleasant matter short of discharge or demotion" gives rise to a legitimate claim under Title VII. *Richardson,* 180 F.3d at 446 (citations omitted). In the context of employment evaluations, District Courts in this Circuit have held that positive evaluations, which are "not as positive" as previous performance evaluations do not constitute adverse employment actions. *See e.g. Evans v. City of New York,* 00 CV 4197(BSJ), 2003 WL 22339468, *11, 2003 U.S. Dist. LEXIS 18281, *33

(S.D.N.Y. Oct. 9, 2003); *Simmons v. New York City Health & Hosp.*, 99 CV 3181, 2001 WL 483675, *5, 2001 U.S. Dist. LEXIS 4640, *21 (E.D.N.Y. Mar. 30, 2001). Even negative evaluations, without accompanying adverse consequence such as demotion, diminution of wages or other tangible loss, are not adverse employment actions. *Castro v. New York City Bd. of Educ.*, 96 · CV 6314(MBM), 1998 WL 108004, *7, 1998 U.S. Dist. LEXIS 2863, *21 (S.D.N.Y. Mar. 11, 1998) (citing *Smart v. Ball State Univ.*, 89 F.3d 437, 442–43 (7th Cir.1996)); see also *Evans*, 1998 WL 108004, 2003 WL 22339468, at *11, 2003 U.S. Dist. LEXIS 18281, at *33–34; *Pellei v. Int'l Planned Parenthood Federation/Western Hemisphere Region, Inc.*, 96 CV 7014, 1999 WL 787753, *12, 1999 U.S. Dist. LEXIS 15338, *33 (S.D.N.Y Sept. 30, 1999).

In the case at bar, even taking the facts in a light most favorable to the Plaintiff, the Plaintiff has not suffered adverse employment action in connection with the "not as positive" performance rating. This court has no doubt that the Plaintiff found the lower performance rating unpleasant. However, as set forth in *Richardson* not every "unpleasant matter" gives rise to a claim under Title VII. The lower performance rating does not, by itself, constitute an adverse employment action. Furthermore, the Plaintiff appealed the performance evaluation and the IBM Panel Review directed that the Plaintiff's evaluation rating be increased to a rating equivalent to that previously given. The Panel's direction was followed and the Plaintiff's evaluation was revised and she received a bonus and salary increase commensurate with a "2" rating. The adverse employ-

ment action component of the Plaintiff's prima facie case for discrimination in connection with her performance evaluation has not been satisfied and this Court does not have to address the other prima facie elements, whether the defendant had a nondiscriminatory reason or whether such reason was a pretext.[13] Accordingly, the Defendant's motion for summary judgment is granted with respect to this cause of action.

D. PLAINTIFF'S CLAIMS FOR FAILURE TO PROMOTE AS TEAM LEAD:

(1) **Plaintiff's Prima Facie Case:**

As set forth above, in order to establish a prima facie case for discriminatory failure to promote, the plaintiff must show that: (1) she applied for an available position; (2) she was qualified for the position; and (3) even though qualified, she was rejected under circumstances which give rise to an inference of discrimination. *Gomez v. Pellicone*, 986 F.Supp. 220, 228 (S.D.N.Y.1997) (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *de la Cruz v. New York City Human Resources Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir.1996)) (internal quotations omitted). An inference of discrimination may arise if the position was filled by an individual that is not a member of the plaintiff's protected class. *Id.*

With respect to this alleged discriminatory failure to promote, the Defendant contends that the Plaintiff cannot establish elements (1) or (2) of its requisite prima facie case, as set forth in *Gomez*. The third element that must be established for a prima facie case of discriminatory failure to promote is some sort of inference of

---

**13.** Although, as stated above, the Court is not required to decide this issue, the Defendant argues that the Plaintiff was given an evaluation, which in Mr. MacGregor's opinion was appropriate for the quality of work performed and that such evaluation was lower than · in previous years because of the merits of her job performance.

discrimination. There is no dispute that the individual who was named Team Lead is not a member of the Plaintiff's protected class, accordingly, the "inference of discrimination" element is deemed satisfied by the Plaintiff for purposes of a prima facie case. *See Gomez* at 228.

■ The first element of a prima facie case of discrimination that must be established by the Plaintiff is that she applied for the applicable position. *See Gomez* at 228. An individual's failure to apply or make known that she desires a certain position can be fatal to a prima facie case of discrimination, even where there is no formal application process. *See Krulik v. Board Of Education Of The City Of New York*, 781 F.2d 15, 21 (2d Cir.1986) (plaintiff did not show that he "applied" where only those persons who expressed their interest, in writing or orally were considered and plaintiff never did so). Alternatively, if a plaintiff can establish evidence of a discriminatory practice, "the non-applicant may, in lieu of application, show that she was within the class of victims who were the subject of unlawful discrimination and that an application would be fruitless, since it would be denied." *Grant v. Bethlehem Steel Corp.*, 635 F.2d 1007, 1016 (2d Cir.1980).

■ It is undisputed that the Plaintiff never applied for the Team Lead position and cannot establish the application element as required by *Gomez*. Instead, the Plaintiff attempts to argue that under *Grant* she was a victim, whose application would have been "fruitless". The Plaintiff contends that Mr. MacGregor "discouraged [her] from applying by telling her he only wanted candidates with overseas work experience[.]" (Plaintiff's Opposition, Page 7). The Plaintiff claims that due to Mr. MacGregor's "warning" she did not apply for the Team Lead position. (Plaintiff's Opposition, Page 8). The

Plaintiff claims that it was discriminatory conduct by Mr. MacGregor that prevented her from getting the Team Lead position. (Plaintiff's Opposition, Page 18). This assertion is significantly undermined by the fact that it was Mr. MacGregor who originally (and unilaterally) hired the Plaintiff for the position with the MD Team. While the "same actor inference" is not dispositive on this issue, *see e.g. Carlton v. Mystic Transportation*, 202 F.3d 129 (2d Cir. 2000), it does raise a strong inference that Mr. MacGregor did not discriminate against the Plaintiff because of her race. *See e.g. Brown v. Society of Seaman's Children*, 194 F.Supp.2d 182, 192 (E.D.N.Y.2002); *Ricks v. Conde Nast Publications, Inc.*, 92 F.Supp.2d 338, 346 (S.D.N.Y.2000). The "same actor inference" is even more conclusive when offered for the purpose of refuting the Plaintiff's allegation that there was a "discriminatory practice" being employed by the Defendant, specifically Mr. MacGregor. The Plaintiff does not provide any evidence of a "discriminatory practice" or that there was a "class of victims" who were subject to unlawful discrimination. The Court finds that the Plaintiff has not established the "application" element, because she has neither shown that she applied, nor that such application would have been fruitless.

Having determined that the Plaintiff did not satisfy the first element for a prima facie case, this court does not need to address whether or not the Plaintiff was qualified for the Team Lead position; however, assuming *arguendo* that the Plaintiff had applied for the position she still would not be able to satisfy the prima facie case because she cannot show that she was qualified for that position. The second element that must be established is that the Plaintiff was qualified for the position for which she was not hired. The Second

Circuit has held that being "'qualified' refers to the criteria the employer has specified for the position." *Thornley v. Penton Publishing, Inc.*, 104 F.3d 26, 29 (2d Cir. 1997). Absent a showing that the qualifications were developed in bad faith, "[a] plaintiff is not entitled to get his or her case before a jury by contending that the demands of the employer were not reasonably related to the performance of the job." *Id.*

In the case at bar, the Defendant contends that Plaintiff was not qualified for the position because (1) she did not have any international employment experience; and (2) she did not have sufficient managerial experience. Further, the Defendant asserts that even if Plaintiff was deemed qualified for the position, the candidate who was ultimately hired, Ms. Curl, met the criteria and was significantly more qualified for the Team Lead position than the Plaintiff. The Plaintiff admits that the above referenced qualifications were set forth for the Team Lead position in both the official IBM job posting and in her conversation with Mr. MacGregor. She also admits that she was not "qualified" with respect to either such requirement. Instead, her argument focuses on the fact that she would have been "qualified," but for the fact that the Defendant, specifically Mr. MacGregor, knowingly set criteria the Plaintiff could not satisfy in bad faith. (Plaintiff's Opposition, Page 18). However, the Plaintiff has not offered any evidence in support of the proposition that the criteria were developed in bad faith. The Defendant's reasons for the criteria and hiring Ms. Curl, which are discussed below, should be found legitimate. *Thornley* is clear that, absent a showing that the employer's criteria were made in bad faith,

neither the Court nor a jury may second-guess the reasonableness of an employer's criteria for employment. *Thornley* at 29. Although the Plaintiff may disagree with the Defendant's decision that Ms. Curl was more qualified for the position of Team Lead, the "Court is not permitted to second-guess the wisdom of [the employer's] selection." *Orisek v. American Inst. Aeronautics and Astronautics*, 938 F.Supp. 185, 192 (S.D.N.Y.1996), *aff'd*, 162 F.3d 1148 (2d Cir.1998). Therefore, this Court finds that the Plaintiff has not satisfied the "qualification" element in order to establish a prima facie case of discrimination.

The Plaintiff's prima facie case fails because she cannot establish two of the three necessary elements; application and qualification.[14] Accordingly, the Defendant's motion for summary judgment with respect to the Plaintiff's claim of failure to promote for the Team Lead position is granted.

## E. PLAINTIFF'S CLAIMS FOR FAILURE TO PROMOTE AS A BIG BLUE FACILITATOR:

### (1) Plaintiff's Prima Facie Case:

As set forth above, in order to establish a *prima facie* case for discriminatory failure to promote, the plaintiff must show that: (1) she applied for an available position; (2) she was qualified for the position; and (3) even though qualified, she was rejected under circumstances which give rise to an inference of discrimination. *Gomez v. Pellicone*, 986 F.Supp. 220, 228 (S.D.N.Y.1997) (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *de la Cruz v. New York City Human*

---

**14.** This Court does not have to address the Defendant's non-discriminatory reason, or whether that reason was a mere pretext; however, if such determination were necessary the Court would find that the Defendant proffered a sufficient, non-discriminatory reason and that such reason was not a pretext for discrimination.

*Resources Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir.1996)) (internal quotations omitted). An inference of discrimination may arise if the position was filled by an individual that is not a member of the plaintiff's protected class. *Id.* The parties do not dispute that the Plaintiff applied for the Facilitator position or that she was rejected under circumstances giving rise to an inference of discrimination. Therefore, in order to address whether or not a prima facie case had been established, this Court need only address the issue of qualification.

The general standards for evaluating the "qualification" element for a prima facie case of discrimination are set forth in Section III(D)(1) above. The position that the Plaintiff was seeking was Basic Blue Facilitator, which involves the facilitation of week-long training programs that are mandated for all new IBM managers. The program involves training, activities and exercises related to IBM's goals and management practices. The parties dispute whether the Plaintiff was qualified for the Facilitator position. At the time the decision was made not to hire the Plaintiff, Mr. MacGregor asserted that she was not qualified because (1) she "failed as a Shades of Blue facilitator" and (2) she "lacks a basic understanding of the role of manager in IBM." (Plaintiff's Opposition, Exhibit 7).

With respect to the Defendant's first argument, it is undisputed that the Plaintiff had done some facilitation work in other situations during her tenure with the MD Team, however, there is some question as to whether or not she was a success or failure. Joerg Schmitz, an outside consultant working with the Shades of Blue program, provided an assessment of the Plaintiff's facilitation performance on February 27, 2001. Mr. Schmitz described the Plaintiff as a star facilitator. He indicated that her strengths were having a good presence in front of groups, building strong relationships with participants and understanding the implications of the multicultural programs, but stated that the Plaintiff needed to "advance her facilitation skills" and that her challenges included "a lack of facilitation, managerial business and multicultural experience." Both the Plaintiff and Defendant rely on Mr. Schmitz's assessment in support of their respective positions with regard to qualification or the lack thereof.

Additionally, the Defendant argues that the Plaintiff did not satisfy the basic criteria required for the position. The job posting for the Facilitator position indicated that prior management experience, including having experienced first hand Basic Blue training, was an important requirement for that position. The Defendant argues that the Plaintiff did not have any recent, or applicable, management experience and she had not experienced Basic Blue training first hand. Given the fact that the Plaintiff had been at IBM for almost thirty years at the time of the decision, it is difficult to argue, as the Defendant does, that the Plaintiff did not have an understanding of the manager's role at IBM.

Further, the Defendant relies upon the Plaintiff's own assessment of her qualifications with respect to the Basic Blue Facilitator position. In the "self-evaluation" portion of the job application, the Defendant set Leadership Theory, Facilitation Skills and People Management Skills as the first three skills required for the position and the Defendant requested that applicants have a proficiency of "5" in each of those areas. The Plaintiff rated herself a "3", "4" and "4", with respect to such categories. While the Plaintiff's own evaluation is some evidence that she may have lacked the minimum qualifications for the position, this Court declines to use the

Plaintiff's own, honest evaluation as evidence against her establishment of a prima facie case. Accordingly, unlike the situation regarding the Team Lead position, with respect to the Facilitator position there are sufficient questions as to whether the Plaintiff was qualified and taking all inferences in Plaintiff's favor, the "qualification" element should be deemed satisfied for the purposes of the Plaintiff's prima facie case.

### (2) Defendant's Non–Discriminatory Reason:

■ Having assumed that the Plaintiff satisfied her prima facie burden with respect to the qualification element, the Defendant offered a nondiscriminatory reason for not hiring her for the position of Facilitator. The Defendant argues that even if the Plaintiff was deemed qualified, which the Defendant disputes, the other candidates, including the person hired for the job, Ms. Bove, were more qualified. Specifically, the Defendant argues that Ms. Bove had extensive first-line managerial experience, was a qualified facilitator and had extensive leadership training. Generally, courts are not permitted to second-guess the wisdom of an employer's hiring decision. *See e.g. Orisek* at 192. Accordingly, this Court accepts the Defendant's non-discriminatory justification as sufficient to rebut the prima facie case and shift the burden back to the Plaintiff to show evidence of discriminatory intent.

### (3) Defendant's Reason a Pre–Text:

■ As set forth above, this Court has determined that (1) there are genuine issues of material fact in dispute regarding the Plaintiff's prima facie case, and (2) the Defendant proffered a non-discriminatory justification for the hiring decision. The third prong of the *McDonnell Douglas* inquiry is whether the Defendant's stated nondiscriminatory reason was a pretext for discrimination. Therefore, summary judgment will be granted unless the Plaintiff can show that there are genuine issues of material fact with respect to (1) whether the Defendant's proffered, non-discriminatory reason was a pretext and (2) whether discrimination was the real reason the Plaintiff did not get the Big Blue Facilitator position. *See Hicks* at 515, 113 S.Ct. 2742.

The Plaintiff contends that the Defendant's hiring "of a less experienced white employee instead of the more experienced [Plaintiff] for the open facilitator position shows that MacGregor's reasons for rejecting [Plaintiff] were pretextual." (See Plaintiff's Opposition, Page 23). As set forth in *Thornley*, the employer is responsible for setting the job qualifications, which shall not be second-guessed in the absence of a showing of bad faith. The Plaintiff has failed to put forth any evidence to show bad faith or to suggest that the Defendant's asserted reason for hiring Ms. Bove for the Facilitator position, that she possessed all of the desired qualifications, rather than the Plaintiff was a pretext for discrimination. Further, while the role of this court is not to play "Super HR," the Defendant's proffered, nondiscriminatory reasons for hiring Ms. Bove, extensive leadership and management experience, are reasonable given the focus of the position at issue—management training for IBM managers. The Plaintiff's pretext argument would have much more weight if the Defendant hired someone without extensive leadership and managerial experience. The Plaintiff's assertion that Ms. Bove was "less experienced" is a conclusory allegation. The Defendant set the qualifications for the position and the Plaintiff rated herself less than qualified in several areas. Although this Court declined to hold the Plaintiff's self-evaluation against her with respect to the establish-

ment of her prima facie case, this fact is significant with respect to the Defendant's proffered reason for not hiring the Plaintiff. It was the Defendant's business judgment that the Plaintiff was not qualified in several key areas, which determination the Plaintiff concurred with pursuant to her self-evaluation, and that even if the Plaintiff was deemed qualified, Ms. Bove was more qualified and that is the reason she was hired; not discrimination against the Plaintiff.

It should be noted that after the Plaintiff learned that she did not get the Big Blue Facilitator position, she complained and the Defendant performed two independent reviews of the hiring process. First, the matter was referred to Nancy Lewis, the Director of IBM Management Development. After Ms. Lewis concluded that the process had been fair, the matter was referred to Ted Hoff, the Vice President of Learning. Mr. Hoff, after reviewing the hiring process, also concluded that the hiring process was fair. Both Ms. Lewis and Mr. Hoff concluded that the process was fair and that the Plaintiff was not hired because she was not as qualified, if qualified at all, for the Big Blue Facilitator position, as was Ms. Bove.

With respect to the second element established in *Hicks*, the Plaintiff must submit some admissible evidence that would support a finding of discriminatory motivation by the Defendant. The Plaintiff has not offered any concrete evidence to support her contention that her failure to get the Facilitator position was a result of racial discrimination. The only support for discrimination that the Plaintiff has submitted, with respect to this cause of action or those set forth above, are conclusory allegations, which are not supported by any admissible evidence. Mere conclusory allegations are insufficient to defeat a motion for summary judgment.

As a matter of law, the Plaintiff cannot show that the Defendant's nondiscriminatory reasons for not hiring the Plaintiff were pretextual, nor can she show that the real reason was discriminatory motivation. Accordingly, the Defendant's motion for summary judgment with respect to the Plaintiff's failure to hire her for the Facilitator position is granted.

## IV. CONCLUSION:

For all of the reasons set forth above, the Defendant's motion for summary judgment is granted in its entirety.

It is so ordered.