Leroy **MOOREHEAD**, Plaintiff,

v.

**NEW YORK CITY TRANSIT AUTHORITY**, Defendant.

No. 02 Civ. 8038(DC).

United States District Court, S.D. New York.

Jan. 6, 2005.

Anthony Q. Fletcher, P.C. by Anthony Q. Fletcher, Nelson M. Farber, New York City, for Plaintiff.

Martin J. Schnabel, Vice President and General Counsel, New York City Transit Authority by Victor Levy, Richard School-man, Brooklyn, NY, for Defendant.

## *MEMORANDUM DECISION*

CHIN, District Judge.

In this employment discrimination case, plaintiff Leroy Moorehead alleges that defendant New York City Transit Authority ("NYCTA") failed to promote him because of his race, national origin, and age, in violation of federal law. Defendant moves for summary judgment dismissing all claims. For the reasons set forth below, the motion is granted.

## *BACKGROUND*

### A. *The Facts*

Construed in the light most favorable to plaintiff, the non-moving party, the facts are as follows:

Moorehead, an African–American man, was employed as an engineer by NYCTA from April, 1960 through January, 1999. (Moorehead Decl. ¶ 1). Moorehead was hired as a junior engineer; he was promoted to Assistant Civil Engineer in May, 1963, and then to Associate Project Manager in March, 1969. (Def.'s 56.1 Statement ¶ 1; Fletcher Decl. ¶ 5).[1] Moorehead retired in January, 1999. (Moorehead Decl. ¶¶ 1–2).

In November, 1996, NYCTA posted a job vacancy notice for positions as Civil Engineer Levels II and III. (Def.'s 56.1 Statement ¶ 2). The notice listed the responsibilities of the Civil Engineer Level III as including supervising "multiple capital construction projects of great technical complexity or with major potential impact

---

1. Where Defendant's Local 56.1 Statement is cited, plaintiff has agreed to the facts, unless otherwise noted.

on operations or infrastructure." (Reiter Aff. Ex. H). Such projects include "tunnel lighting projects (bid > $10M), escalator rehabilitations, pump room rehabs (bid > $10M), ... and similar projects with a bid cost exceeding $10 million." (*Id.*). The education and experience requirements were a New York professional engineer license and "four years of full-time experience in Civil Engineering with at least one year in the last three years of experience as a major contributor or a project leader on a complex project requiring additional or specific expertise within the discipline of civil engineering." (*Id.*).

In early December, 1996, Moorehead submitted an application for a Civil Engineer Level III position. (Def.'s 56.1 Statement ¶ 3; Pl.'s 56.1 Statement ¶ 8). Moorehead was 63 years of age when he applied for the promotion. (Moorehead Decl. ¶¶ 1, 5). By August, 1997, NYCTA had selected eighteen applicants for the position of Civil Engineer Level III. (Reiter Aff. ¶ 3). Moorehead was not selected for the promotion. (Def.'s 56.1 Statement ¶ 5; Moorehead Decl. ¶¶ 6, 21). Moorehead was given no official notice of denial of promotion. (Moorehead Decl. ¶ 21). Rather, he received word upon seeing a list of the eighteen Transit Authority employees who were promoted to Civil Engineer Level III, in April, 1998. (*Id.* ¶ 22). Earlier, Moorehead had learned, in late 1997, of one candidate who had been promoted to Civil Engineer Level III. (Moorehead Dep. at 60–61).

**B.** *Procedural History*

Plaintiff filed a charge of discrimination with the New York State Division of Human Rights (the "NYSDHR") on November 24, 1998. (Fletcher Decl. ¶ 24; Levy Decl. Ex. D). The NYSDHR dismissed the complaint on June 19, 2002, finding insufficient evidence that defendant failed to promote Moorehead because of his race, national origin, or age. (Levy Decl. Ex.

E). The NYSDHR also noted that Moorehead "initiated his complaint more than a year after he had knowledge that others had been promoted to Civil Engineer, Level III." (*Id.*). The EEOC adopted the findings of the NYSDHR and issued a Right to Sue letter on July 12, 2002. (Levy Decl. Ex. A).

Plaintiff filed the instant suit on October 9, 2002, alleging violations of the Civil Rights Act of 1962, 42 U.S.C. § 2000e *et seq.*, as amended ("Title VII"), with respect to his race and national origin, and the Age Discrimination in Employment Act, 29 U.S.C. § 629 *et seq.* (the "ADEA"). The parties engaged in discovery and the instant motion for summary judgment followed. For the reasons set forth below, defendant's motion for summary judgment dismissing all claims is granted.

## DISCUSSION

**A.** *Summary Judgment Standard*

The standards governing motions for summary judgment are well-settled. A court may grant summary judgment only where there is no genuine issue of material fact and the moving party therefore is entitled to judgment as a matter of law. *See* Fed R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Accordingly, the court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). There must be sufficient evidence in the record to support a jury verdict in the nonmoving party's favor to create an issue for trial. *See id.*

To defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct.

1348. As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted). The nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *Nat'l Union Fire Ins. Co. v. Deloach*, 708 F.Supp. 1371, 1379 (S.D.N.Y. 1989) (quoting *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir.1984) (internal quotations omitted)). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir.1996) (internal quotations omitted).

## B. *Timeliness of EEOC Charge*

### 1. *Applicable Law*

■ A prerequisite to the filing of a federal civil action under Title VII and the ADEA is the timely filing of a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC"). *Legnani v. Alitalia Linee Aeree Italiane, S.P.A*, 274 F.3d 683, 686 (2d Cir.2001). Where the alleged act of discrimination occurs in a state that has its own anti-discrimination laws and a state agency is empowered to enforce the laws, the charge of discrimination must be filed with the EEOC within 300 days after the date of the alleged unlawful act. 42 U.S.C. § 2000e–5(e); 29 U.S.C. § 626(d). The 300–day period starts to run when the claimant receives notice of the allegedly discriminatory act, not when the allegedly discriminatory decision takes effect. *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980);

*DeSalvo v. Metro. Opera Ass'n Inc.*, No. 96 Civ. 8292(DC), 1997 WL 337517, at *2 (S.D.N.Y. June 19, 1997); *see also Miller v. IT & T Corp.*, 755 F.2d 20, 23 (2d Cir.1985) (limitations period begins to run "on the date when the employee receives a definite notice of the termination"), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985). For these purposes, filing with the NYSDHR is deemed filing with the EEOC. 29 C.F.R. § 1601.13(b).

### 2. *Application*

NYCTA alleges that Moorehead did not timely file his complaint with the NYSDHR. NYCTA contends, and the NYSDHR found, that plaintiff knew that others had been promoted to Civil Engineer Level III in late 1997, but did not file his complaint with the NYSDHR until November 24, 1998, *i.e.*, more than 300 days later. Plaintiff acknowledges that he learned in late 1997 that another employee had been promoted, but asserts that he did not learn that he had not been promoted until he saw the list of all promoted candidates in April, 1998.

■ Assuming Moorehead in fact did not hear that he was not promoted until April, 1998, a reasonable fact-finder could conclude that he did file his administrative complaint within 300 days from the time he received notice of the alleged discriminatory act—defendant's failure to promote him. Defendant's argument that Moorehead admits he learned of one promotion, out of eighteen, in late 1997 is insufficient to prove that he necessarily received notice that he would not be promoted. A reasonable trier of fact on this record could find that Moorehead merely had been put on notice that the promotion selection process had begun, not that it was completed, *i.e.*, that he had not been promoted.[2] For these reasons, summary

---

2. Defendant also argues that Moorehead

knew, or should have known, he had not been

judgment based on the timeliness of plaintiff's administrative complaint is denied.

## C. *Failure to Promote Claim*

### 1. *Applicable Law*

The "ultimate issue" in any employment discrimination case is whether the plaintiff has met his or her burden of proving that the adverse employment decision was motivated at least in part by an "impermissible reason," *i.e.*, that there was discriminatory intent. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 119 (2d Cir.1997). Cases brought under Title VII and the ADEA generally are analyzed pursuant to the three-step test set forth in *McDonnell Douglas* and refined in later cases. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Stratton v. Dep't for the Aging*, 132 F.3d 869, 879 (2d Cir.1997) (ADEA); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407; *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 311–12 (2d Cir. 1997).

■ With respect to a discriminatory failure to promote claim, a plaintiff must first establish a *prima facie* case of unlawful discrimination by showing that (1) he is a member of a protected category, (2) he applied for an available position, (3) he was qualified for the position, and (4) he was rejected under circumstances that give rise to an inference of discrimination. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 (2d Cir.2000); *de la Cruz v. N.Y. City Human Resources Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir.1996). "An inference of discrimination may arise if the position remains open and the employer continues to seek applicants of the plaintiff's qualifications [ ] or if the position was filled by someone not a member of plaintiff's protected class." *Gomez v. Pellicone*, 986 F.Supp. 220, 228 (S.D.N.Y.1997) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *de la Cruz*, 82 F.3d at 20).

Second, if the plaintiff establishes a *prima facie* case, a rebuttable presumption of discrimination arises, and the burden then shifts to the defendant to "articulate a legitimate, clear, specific and nondiscriminatory reason" for the employment decision. *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir.1995); *see also Reeves*, 530 U.S. at 143, 120 S.Ct. 2097.

Third, if the employer articulates a nondiscriminatory reason for its actions, the presumption of discrimination is rebutted and it "simply drops out of the picture." *St. Mary's Honor Ctr.*, 509 U.S. at 511, 113 S.Ct. 2742 (citation omitted). The burden then shifts back to the plaintiff to show, without the benefit of any presumptions, that more likely than not the employer's decision was motivated, at least in part, by a discriminatory reason. *See id.* at 515–16, 113 S.Ct. 2742; *Lanier v. I.B.M. Corp.*, 319 F.Supp.2d 374 (S.D.N.Y.2004).

To meet this burden, the plaintiff may rely on evidence presented to establish his *prima facie* case as well as additional evidence. It is not sufficient, however, for a

promoted in late 1997 once he knew that a promotion list existed, which knowledge it argues plaintiff had in late 1997, based on plaintiff's deposition testimony that he "assumed a list existed once [he] heard someone was promoted." (Def.'s Mem. at 2–3; Moorehead Dep. at 62). Because plaintiff heard someone was promoted in late 1997, defen-

dant argues, he must have assumed at that point a promotion list existed and therefore knew or should have known he was not promoted. Nevertheless, this argument is insufficient on summary judgment, where inferences must be drawn in favor of plaintiff, who asserts that he did not have knowledge of the final list until April, 1998.

plaintiff merely to show that he satisfies "*McDonnell Douglas's* minimal requirements of a *prima facie* case" and to put forward "evidence from which a factfinder could find that the employer's explanation ... was false." *James v. N.Y. Racing Ass'n,* 233 F.3d 149, 153 (2d Cir.2000). Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination on the basis of race, age, or some other impermissible factor. *See id.* at 157; *Connell v. Consolidated Edison Co. of N.Y., Inc.,* 109 F.Supp.2d 202, 207–08 (S.D.N.Y.2000).

As the Second Circuit observed in *James,* "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove—particularly discrimination." 233 F.3d at 157; *see Lapsley v. Columbia Univ.,* 999 F.Supp. 506, 513–16 (S.D.N.Y. 1998) (advocating elimination of *McDonnell Douglas* test in favor of simplified approach focusing on ultimate issue of whether sufficient evidence exists to permit jury to find discrimination); *see also Norton v. Sam's Club,* 145 F.3d 114, 118 (2d Cir.1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases. In these, as in most other cases, the plaintiff has the ultimate burden of persuasion.").

### 2. *Application*

At the outset, I assume that plaintiff has made out the *prima facie* case required by *McDonnell Douglas.* Defendant has articulated a legitimate, nondiscriminatory reason for its failure to promote plaintiff to the position of Civil Engineer Level III,

contending that Moorehead was not as qualified as the successful applicants, who were all, at the time of their applications, working on projects of greater value and size. (Levy Decl. Ex. G; Levy Reply Decl. Ex. 1).

Hence, I proceed directly to the ultimate question of whether plaintiff has presented sufficient evidence from which a reasonable jury could find discrimination. I do so by evaluating first plaintiff's evidence, then defendant's evidence, and finally the record as a whole, keeping in mind the elusiveness of proof of discrimination and the principle that the jury is "entitled to view the evidence as a whole." *Stern,* 131 F.3d at 314; *see also Siano v. Haber,* 40 F.Supp.2d 516, 520 (S.D.N.Y.1999), *aff'd mem.,* 201 F.3d 432 (2d Cir.1999).

### i. *Plaintiff's Evidence*

Moorehead attempts to support his claims by offering proof that defendant's proffered non-discriminatory reason for failing to promote him—successful applicants were more qualified—is a pretext. In support of his claim of pretext, he contends that the successful applicants were not more qualified because they were not working on much larger projects. Plaintiff's argument, however, is based on a misinterpretation of defendant's data concerning the projects on which the successful applicants were working at the time of their applications.

In considering applicants for the promotion, NYCTA considered most qualified those applicants who were already doing work involving the job responsibilities of a Civil Engineer Level III. (Reiter Aff. ¶ 5; Schiebel Aff. ¶ 5; Def.'s Reply Mem. at 5). In other words, the successful applicants were supervising "capital construction projects of great technical complexity or with major potential impact on operations or infrastructure." (Reiter Aff. ¶ 5 and Ex.

H). Projects of great technical complexity were defined as including "projects with a bid cost exceeding $10 million." (Reiter Aff. Ex. H). Fifteen of the eighteen successful applicants in the year of their applications were engineers on projects with bids of more than $10 million, and one of the eighteen worked on a project with a bid of nearly $8 million. (Fletcher Decl. Ex. C; Levy Reply Decl. Ex. 1). Plaintiff, in contrast, was working on a project with a bid price of $1.7 million at the time of his application. (Reiter Aff. ¶ 4). The other two applicants were considered qualified because they were "managing multiple substantial projects" (Def.'s Mem. at 18) "of great value." (Schiebel Aff. ¶ 4).[3]

■ Defendant analyzed the size of projects based on the contract bid price of the projects. In reviewing the data disclosed by defendant, plaintiff mistakenly interpreted defendant's in-house engineering prices as the contract bid prices, resulting in his erroneous assertion that none of the successful applicants in fact was working on a project with a bid of more than $10 million. (See Fletcher Decl. ¶ 29). While plaintiff's mistake is understandable, given the confusing nature of the tables of information provided by defendants, he nonetheless fails to present evidence from which a reasonable jury could find that defendant's non-discriminatory reason for failing to promote him was a pretext.

Moorehead does present some evidence of discrimination, but not enough evidence to support a jury verdict in his favor. He shows that he is an African–American man who at the time of his application for promotion was 63 years old. He presents evidence that of the eighteen successful applicants, one was White, two were Afri-

can–American, and fifteen were Asian. With regard to age, he shows that of the group of eighteen, ten were 40 years or younger; two were 45–49 years; four were 50–59 years; and one was 60 years of age. (Fletcher Decl. ¶ 26). Moorehead provides no evidence regarding the national origin of the successful candidates, beyond speculation that employees from India "are treated differently than others." (Moorehead Dep. at 70). Although the fact that fifteen of the eighteen successful candidates were Asian is arguably some evidence of preferential treatment, in light of the indisputable evidence of their qualifications and plaintiff's lack of experience with projects of "great technical complexity," no reasonable jury could find that defendants denied him the promotion based on his age, race, or national origin.

### ii. *Defendant's Evidence*

Defendant puts forth the following evidence in support of its motion for summary judgment and against an inference of discrimination:

First, Moorehead was only minimally qualified, if at all. Moorehead met the threshold experience and education requirements only recently before his application, having obtained his license four months before applying. (Levy Decl. Ex. A). At the time of his application, plaintiff was not supervising a project with a bid value anywhere near the $10 million bid price of typical complex Transit Authority projects supervised by Civil Engineers, Level III. The one project with a bid of more than $10 million on which Moorehead worked was completed in 1982, more than ten years before his application for pro-

---

**3.** One of the two applicants was the liaison between the Department of Subways and the Department of Capital Program Management for all capital projects in the Department of Subways. (Schiebel Aff. ¶ 4 and Ex. G). The

other applicant was the liaison between the Transit Authority and outside contractors on all outside construction projects taking place on Transit Authority property. (*Id.*).

motion to Civil Engineer Level III. (Moorehead Aff. ¶ 14–15).

Second, some of the successful Level III candidates were African–American and some were over the age of forty. Further, defendant's promotion process for Civil Engineer Level II, concurrent with the Level III promotions, supports an inference that defendant does not base its promotions on discriminatory reasons. Nineteen of the forty-eight successful candidates for the Level II position were over 50, three of whom were over age 65, at the time of their applications. (Levy Decl. Ex. B). Although unclear from the record how many, defendant hired a number of African–American candidates for the Level II position. (*See id.*).

Third, one of the purposes of creating the position of Civil—Engineer Level III was to phase-out union-represented employees in the Administrative Engineer title, by promoting them to the non-union position of Civil Engineer Level III. (Johnson Aff. ¶ 2). Eight of the successful candidates held the position of Administrative Engineer, which Moorehead did not. (*Id.* at 6). None of this evidence is disputed by plaintiff.

### iii. *The Record As a Whole*

Considering the evidence as a whole, and resolving all conflicts in the evidence and drawing all reasonable inferences in plaintiff's favor, I conclude that no reasonable trier of fact could find that plaintiff's age, race, and national origin were factors in defendant's failure to promote him to Civil Engineer Level III. Moorehead is obliged to present sufficient evidence to support a finding by a reasonable jury. *See Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 714 (2d Cir.1996) (to defeat summary judgment, plaintiff is obliged not just to produce "some" evidence, but must produce sufficient evidence to support a rational jury verdict in

his favor). Moorehead offers no evidence of discrimination other than (1) he is African–American, (2) he was 63 at the time of his application, and (3) some of the successful candidates were younger than him and not African–American. Plaintiff focused entirely on establishing his *prima facie* case, which defendant rebutted with a non-discriminatory reason for failure to promote, and on arguing—based on a misunderstanding of the facts—that defendant's reason was a pretext. Moreover, even assuming a reasonable jury could find that NYCTA's stated reasons for promoting individuals other than Moorehead were pretextual, he has not presented evidence from which a reasonable jury could find that this was pretext to hide discrimination because of race, national origin, or age. Because plaintiff has failed to put forward evidence upon which a reasonable trier of fact could find a discriminatory motive played a part in defendant's failure to promote him, defendant's motion for summary judgment is granted.

### CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is granted as to all claims. Moorehead's complaint is dismissed with prejudice and without costs. The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.