Tonia BUSH, Plaintiff,

v.

FORDHAM UNIVERSITY, Defendant.

No. 04 Civ. 01847(RJH).

United States District Court,
S.D. New York.

Sept. 25, 2006.

Sandra D. Frelix, Sandra D. Frelix, P.C., New York, NY, for Plaintiff.

Daniel F. Murphy, Jr., Sean H. Close, Putney Twombly Hall & Hirson LLP, New York, NY, for Defendant.

## MEMORANDUM OPINION AND ORDER

HOLWELL, District Judge.

This is an employment discrimination action. Plaintiff Tonia Bush brought this action against her employer Fordham University ("Fordham"), asserting claims that on the basis of her race, she was denied promotion and subjected to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, the Civil Rights Act of 1866, 42 U.S.C. § 1981, the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.*, and the New York City Human Rights Law, N.Y.C. Admin. Code § 8–107 *et seq.* Bush also claims that Fordham retaliated against her for filing charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"), in further violation of Title VII, § 1981, and New York law. Last, Bush asserts a state law claim for intentional infliction of emotional distress.

Defendant moved for summary judgment [41]. For the reasons set forth below, defendant's motion is granted.

## BACKGROUND

Unless otherwise indicated, the following facts are either undisputed or evaluated in the light most favorable to the plaintiff.[1]

---

**1.** Many of the factual statements cited in this section are attributed to defendant's Rule 56.1 Statement. Although Bush did not specifical-ly respond to defendant's 56.1 Statement in the precise form specified by the local rule, the Court overlooks this technical defect and

*Plaintiff's Hiring and Transfer*

Tonia Bush, an African–American female, was hired by Fordham on January 11, 1999. (Pl. Affirmation 1; Def. 56.1 Statement ¶ 2.) Throughout her employment at Fordham, the terms of her employment were governed by the collective bargaining agreement between Fordham and Local 153 of the Office and Professional Employees International Union ("Union"), which represents Fordham's clerical employees. (Compl. ¶ 22; Def. 56.1 Statement ¶ 4.) The collective bargaining agreement describes six salary levels for clerical employees. (Local 153 Contract art. XVIII § 3, Def. Ex. G.) Bush was hired as a Senior Secretary at the Fordham University School of Law, a Level 4 position. On May 1, 2000, Bush received a promotion to Executive Secretary, a Level 5 position, with a commensurate salary increase. (Pl. Affirmation 1; Def. 56.1 Statement ¶¶ 5, 7).

In 2002, Bush applied for the Level 5 position of Executive Secretary to Shapoor Vali, the Associate Dean of Fordham College at Lincoln Center. Bush interviewed with Vali, Robert Grimes (Dean), and Judy Kelly (administrative assistant to Dean Grimes). (Def. 56.1 Statement ¶ 9.[2]) Vali, Grimes, and Kelly also interviewed two Caucasian candidates, but they unanimously preferred Bush for the position. (Grimes Aff. ¶ 5, Def. Ex. BB.) On September 16, 2002, Bush transferred to her new position as Executive Secretary to Associate Dean Vali. (Pl. Mot. in Opp'n to Def. Mot. for Summ. J. ("Pl.Opp'n") 2, 6–7; Def. 56.1 Statement ¶ 8.)

*Denial of Promotion*

In April 2003, Bush decided to apply to have her position reclassified as a Level 6 Senior Executive Secretary position. Bush requested a recommendation from Dean Grimes, but he declined, citing Bush's lack of experience and responsibility. (Grimes Aff. ¶¶ 6–7; e-mail from Plaintiff to Robert Grimes (Apr. 29, 2003), Pl.Ex. T.) The next day, Bush hand-delivered her application to Nicole Beckford, Human Resources Manager, who is also African–American. Beckford refused to accept the application because Dean Grimes had not agreed to the upgrade. Undaunted, Bush mailed the application to Beckford. (Compl. ¶¶ 15–17; Def. 56.1 Statement ¶¶ 15–18.) On May 31, Beckford denied Bush's application, explaining that Bush's current duties did not rise to the level of responsibility required of a Level 6 employee. (Def.Ex.M.) The precise criteria for a Level 6 upgrade are relevant to the Court's Title VII analysis and will be discussed in greater detail, *infra.*

On June 11, 2003, Bush filed a charge of discrimination with the EEOC. (Def. 56.1 Statement ¶ 28.) Bush alleged that Fordham denied her request for an upgrade because of her race. (EEOC Charge of Discrimination (June 11, 2003), at 2, Def.

---

reads Bush's responses liberally as she is *pro se.* Thus, wherever the factual assertions presented in Bush's affirmation and accompanying exhibits conflict with Fordham's statements of material undisputed facts, the Court considers the plaintiff to be contesting Fordham's statements. *See Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 73 (2d Cir.2001) (excusing *pro se* plaintiff's failure to submit 56.1 statement). The court therefore will consider all admissible evidence in the record, whether contained in the 56.1 Statement or elsewhere.

Accordingly, the facts as herein recited are drawn from defendant's Rule 56.1 Statement ("Def. 56.1 Statement"), plaintiff's exhibits ("Pl.Ex."), defendant's exhibits ("Def.Ex."), and Plaintiff's Affirmation ("Pl.Affirmation"). All affidavits cited herein were submitted by defendant.

2. Bush does not recall interviewing with Kelly but does not dispute this fact. (Pl.Dep.58.)

Ex. C.) The EEOC dismissed her charge upon its determination that the information obtained did not establish discrimination and issued a notice of right to sue on November 10, 2003.

Bush applied again for a Level 6 upgrade in November 2003. The newly formed Upgrade Selection Committee, created pursuant to the July 2003 Union contract and comprised of two Union delegates and two members of Human Resources, evaluated her application. On November 20, the committee denied her request for an upgrade, explaining that the responsibilities of her position were not commensurate with Level 6 and citing the fact that she lacked a recommendation from Grimes. (Memorandum from the Upgrade Selection Committee to Plaintiff (Nov. 20, 2003), Pl.Ex. L.) Bush then filed the instant action on March 8, 2004, alleging that Fordham's denial of her Level 6 upgrade applications in May and November 2003 constituted discrimination under Title VII.[3]

Then, in April 2004, Bush applied to have her position reclassified as a Level 7 Legal Secretary position. On May 12, Beckford denied Bush's application. Beckford explained that under the Union contract, Level 7 employees must be hired into a Level 7 position, not promoted from other clerical positions. (Letter from Nicole Beckford to Plaintiff (May 12, 2004), Pl.Ex. L; *see also* Local 153 Contract art. XVIII § 3, Def. Ex. G.) In addition, Legal Secretaries are employed exclusively at Fordham School of Law, not at Fordham College where Bush was employed. (Pl. Ex.L.)

*Judy Kelly*

In her complaint, Bush claims that Judy Kelly, a Caucasian employee, was promoted from Level 5 Executive Secretary, a Union position, to Administrative Assistant, a non-union position, despite the fact that she possessed less education, experience, and seniority than Bush.[4] Bush claims that this disparate treatment demonstrates racial discrimination.

Fordham hired Kelly on September 5, 2000 as a Level 5 Executive Secretary reporting directly to Dean Grimes. In 2001, before Bush had transferred to the Dean's office, Grimes requested that Fordham promote Kelly to Administrative Assistant, a non-union position that is exempt from federal and state wage and hour laws and is not subject to the collective bargaining agreement. Grimes requested the upgrade in part because Kelly's position as the Dean's secretary exposed her to confi-

---

**3.** Bush filed this action on March 8, 2004, 119 days after the date appearing on the EEOC notice of right to sue, November 10, 2003. Title VII requires a plaintiff to file the claim within ninety days of receipt of a right-to-sue letter from the EEOC or applicable state or local agency. 42 U.S.C. § 2000e–5(f)(1); *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir.1996) ("In order to be timely, a claim under Title VII or the ADEA must be filed within 90 days of the claimant's receipt of a right-to-sue letter.") However, the parties appear to be uncertain as to the actual date Bush received the letter. (Pl.Dep. ¶¶ 73–76.) Also, Fordham has not argued that Bush's Title VII discrimination claims are untimely. The ninety-day period is not jurisdictional but rather, "like a statute of limitations," is "subject to waiver, estoppel, and equitable tolling." *Zipes v. TWA*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir.1984). For these reasons, the Court for the purpose of this ruling considers Bush's initial complaint asserting Title VII claims filed on March 8, 2004 to be timely.

**4.** In Bush's June 11, 2003 EEOC charge, she mistakenly claimed that Fordham promoted Kelly to Level 6, rather than to the non-union position of Administrative Assistant. (EEOC Charge of Discrimination (June 11, 2003), at 2, Def. Ex. C.)

dential information regarding personnel and labor relations issues. (Grimes Aff. ¶ 10.) Kelly managed the Dean's office and regularly worked overtime. In addition, Kelly's counterpart in the Dean's Office at Fordham College at Rose Hill was a non-union Administrative Assistant. *(Id.)* Accordingly, on September 1, 2001, Fordham promoted Kelly to the position of Administrative Assistant reporting directly to Dean Grimes. Kelly never held the Level 6 title for which Bush applied, nor did she ever apply for it. (Def. 56.1 Statement ¶¶ 31–33.)

*Plaintiff's Relationship with Judy Kelly*

Shortly after Bush transferred from the law school to Fordham College, she asked Grimes to sign her request for tuition remission benefits for the Spring 2003 semester.[5] Grimes asked Kelly to look into whether Bush's request complied with Fordham procedures for requesting such benefits. When Bush found out that Kelly had asked Human Resources whether Bush was taking more courses than permitted, she became upset and told Kelly that she was not following Grimes's instructions correctly. (Pl. Dep. 121–25; Def. 56.1 Statement ¶¶ 37–39.) According to Bush, Kelly became "intimidated." (Pl. Dep.124–26.)

From that point forward, the relationship between Bush and Kelly deteriorated. (Pl.Dep.121–22.) Bush made various allegations to Grimes and the Union regarding Kelly, including that Kelly failed to give Bush telephone messages, and that Kelly refused to greet or say goodbye to Bush. Bush also alleged that Kelly too closely scrutinized Bush's behavior in the office. (Def. 56.1 Statement ¶ 41; Def. Ex. O, Q.) Kelly likewise complained to Grimes about Bush's behavior on several occasions. According to Kelly, Bush regularly stared at Kelly. (Def. 56.1 Statement ¶ 42.) In April 2003, Bush began keeping a journal that tracked Kelly's movements in the office, including the time that Kelly left and returned from trips to the restroom. (Pl. Ex.Z.)

*Plaintiff's Disciplinary Record*

On January 22, 2004, Grimes met with Bush to discuss the procedure for submitting timesheets, a source of ongoing disagreement between Bush and Kelly. Beckford and George Williams, the Union Shop Steward, were also present. (Def. 56.1 Statement ¶ 43.) In the middle of the meeting, while Grimes was explaining the proper procedure, Bush walked out, ignoring Grimes's direction for her to return. (Def. 56.1 Statement ¶ 44.) On January 26, Beckford issued Bush a written warning, informing her that any future acts of insubordination would result in disciplinary action, up to and including suspension and termination. (Def. 56.1 Statement ¶ 44; Def. Ex. S.)

Between January 1 and July 19, 2004, Bush called in sick for work twenty-three times, despite the fact that employees covered by the collective bargaining agreement accrue only twelve paid sick days each calendar year. (Def. 56.1 Statement ¶¶ 45–46.) On July 1, Grimes asked Bush to attend a meeting with Beckford, Williams, and Kathleen Ruggiero, the Union Chief Shop Steward, to discuss her poor attendance. Prior to the start of the meeting, Bush informed Ruggiero and Williams that she refused to attend. (Def.Ex. T.) Grimes warned Bush that a refusal to attend would be considered in-

---

5. Pursuant to the Union contract, Fordham employees are entitled to take up to ten credits per semester free of charge. (Local 153 Contract art. XXI § 1, Def. Ex. G.) Bush fully availed herself of this benefit during her employment, earning a bachelor's degree in computer science in May 2004. (Pl.Dep.46.)

subordination. Bush persisted in her refusal to attend, so Beckford directed Bush to leave the office for the day. When Bush refused to leave the office, Beckford contacted security to escort Bush from the building. (Def. 56.1 Statement ¶ 47.) Beckford subsequently issued Bush a one-day suspension for insubordination as a result of this conduct. (Ex. T; Pl. Dep. 220–23.)

On July 19, Beckford, Williams, Ruggiero, and Angela Cioffi, the Director of Labor and Employee Relations at Fordham, met with Bush to discuss her attendance. Beckford warned Bush that she had been excessively absent and that her failure to improve her attendance would result in further discipline.[6] (Def. 56.1 Statement ¶ 49.) On July 27, Beckford issued Bush a written warning directing her to improve her attendance. (Def.Ex.U.)

On July 30, 2004, Bush filed a charge of retaliation with the EEOC. (Def. 56.1 Statement ¶ 28.) Bush alleged that the one-day suspension and written warning regarding her attendance constituted retaliation against her for filing a charge of discrimination in June 2003. (EEOC Charge of Discrimination (July 30, 2004), at 2, Def. Ex. D.) The EEOC dismissed her charge upon its determination that the information obtained did not establish discrimination or retaliation and issued a notice of right to sue. Bush amended her complaint on November 29, 2004 to include her claims of retaliation.[7]

Bush next called in sick on August 16 and September 2, 2004, despite the July 27 warning. Fordham issued Bush a three-day suspension and final written warning for these absences on September 7, 2004. (Def. 56.1 Statement ¶ 49.) Plaintiff received no further discipline until her termination.

*Plaintiff's Allegations Against Kelly and Her Termination*

On August 12, 2004, Bush wrote to Grimes and to the Union alleging that Kelly had harassed her by "slamming" two sets of doors "in her face" that morning as

---

**6.** Following this meeting, Bush applied for leave under the Family and Medical Leave Act ("FMLA") to care for her parents and daughter. Cioffi requested medical information in accordance with Fordham's procedures, but Bush failed to provide any supporting documentation. (Cioffi Aff. ¶ 29.) On August 9, 2004, Bush submitted a new request for intermittent FMLA leave for her own medical condition but once again failed to provide the necessary documentation. (Cioffi Aff. ¶ 30.) Bush finally provided completed medical certification on September 3, 2004. Accordingly, on September 7, 2004, Fordham granted the requested FMLA leave. *Id.* Bush complained to the U.S. Department of Labor ("USDOL") regarding Fordham's requirement that she provide Fordham with documentation supporting her leave. The USDOL subsequently contacted Cioffi to advise Fordham of Bush's allegations. (Close Reply Affirmation, Ex. A; Pl.Ex. O.) Counsel for Fordham discussed the circumstances surrounding Bush's FMLA leave and the reasons for its requests for documentation in support

of the leave with USDOL. USDOL has taken no further action Bush's complaint. (Close Reply Affirmation ¶¶ 2–5.)

**7.** This was Bush's second amended complaint, as she first amended her complaint to add the Union as a defendant on June 15, 2004. (The second amended complaint did not name the Union as a defendant.) Bush filed her second amended complaint incorporating the retaliation charges on November 29, 2004, 108 days after the date of August 13, 2004 on the EEOC's right-to-sue letter. As with the first right-to-sue letter, however, the parties appear to be uncertain as to the date that Bush received the second right-to-sue letter (Pl.Dep.77–79), and defendant has not argued that the Title VII claims added in Bush's second amended complaint are untimely. For the same reasons given *supra* at note 3, the Court for the purpose of this ruling considers Bush's second amended complaint asserting Title VII claims filed on November 29, 2004 to be timely.

Bush and Kelly entered the office. (Pl. Dep. 234–38; Def. 56.1 Statement ¶ 54; Def. Ex. Q.) Based on Bush's allegations, the Union filed a grievance on Bush's behalf alleging that Kelly "used unprofessional and abusive behavior." Neither Bush nor the Union claimed that Kelly's alleged actions were based on Bush's race. (Def. Ex. Q; Pl. Dep. 238–41.) On August 17, a grievance hearing was held with Bush, Kelly, Beckford, and Union representatives Williams and Ruggerio to consider Bush's allegations. According to Fordham, the Director of Facilities Operations demonstrated that the doors that Bush claimed that Kelly had slammed in her face could not in fact have been slammed because of safety mechanisms on the doors. (Def. 56.1 Statement ¶ 57.) Beckford, as Hearing Officer, found that Bush's allegations were false. (Def.Ex. R.) On August 20, Beckford issued Fordham's decision regarding Bush's grievance, stating that during the meeting Bush "admitted that the doors were not slammed but were allowed to close in their normal manner." *(Id.)* She called Bush's allegations "reprehensible" and directed Bush to cease her "disruptive behavior." *(Id.)*

On February 15, 2005, Bush complained to Grimes and the Union that Kelly's twenty-two-year-old daughter, who briefly visited Kelly at the office on the previous day, had attempted to physically injure Bush by blocking the path to Grimes's office. (Def. 56.1 Statement ¶ 60; Def. Ex. W.) Bush claimed that Kelly incited her daughter to engage in disorderly conduct, and that Bush "felt threatened and feared for [her] life." (Def. Ex. W; Pl. Dep. 234–38.) At a hearing to address the Union's grievance, Bush was given the opportunity to present her version of events. After initially stating that she could not remember what took place, Bush restated the allegations contained in the grievance. After Bush, Grimes, and Kelly alternately demonstrat-ed where they had stood, Beckford found that Bush's allegations were false. (Def. 56.1 Statement ¶ 58.) On March 2, 2005, Cioffi (the Director of Labor and Employee Relations) informed Bush that because of her prior disciplinary record and this latest incident, Fordham was terminating her employment effective March 2, 2005. (Def.Ex.AA.)

On March 17, 2005, Bush filed a charge of retaliation with the EEOC. (Def. 56.1 Statement ¶ 67.) Bush alleged that she was terminated in retaliation for her earlier charges of discrimination and retaliation. (EEOC Charge of Discrimination (Mar. 17, 2005), at 2, Def. Ex. E.) The EEOC dismissed her charge upon its determination that the charge failed to state a claim under any of the statutes enforced by the EEOC. *(Id.)* Bush failed to amend her complaint to include the charge that her termination was retaliatory.

## DISCUSSION

### 1. *Summary Judgment Standard*

Under Federal Rule of Civil Procedure 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 321, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Distasio v. Perkin Elmer Corp.,* 157 F.3d 55, 61 (2d Cir.1998); *Conway v. Microsoft Corp.,* 414 F.Supp.2d 450, 458 (S.D.N.Y.

2006). A party moving for summary judgment may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548.

A fact is considered "material" for purposes of Rule 56 if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Whether a material issue is "genuine" depends on whether the evidence is of a type that would permit a reasonable jury to return a verdict in favor of that party. *Id.; Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir.2003). In making its showing that a genuine issue of material fact exists, the nonmoving party may not rely on "the mere existence of a scintilla of evidence" to support its position, but must instead proffer "evidence on which the jury could reasonably find for the [plaintiff]." *Dawson v. County of Westchester*, 373 F.3d 265, 272 (2d Cir.2004) (citing *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505). Although "[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases," *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.2001), it is "sparingly used where intent and state of mind are at issue because ... careful scrutiny of the factual allegations may reveal circumstantial evidence to support the required inference of discrimination," *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir.2000) (citations omitted).

**2. Bush's Claims**

Bush has asserted claims of failure to promote, retaliation, and hostile work environment based on race in violation of Title VII and § 1981. Claims of employment discrimination brought under Title VII and § 1981 are subject to the same analysis. *Patterson v. McLean Credit Union*, 491 U.S. 164, 186, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), *superseded by statute on other grounds*, Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1074 (deciding that burden-shifting scheme developed under Title VII "should apply to claims of racial discrimination under § 1981"). The plaintiff also brings discrimination claims under New York state and city law, and as the state and city law claims are also subject to the same analysis as claims under Title VII, all claims are analyzed in tandem below. *See Abdu–Brisson*, 239 F.3d at 466; *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n. 1 (2d Cir.2000) (stating that state and city discrimination claims subject to same Title VII analysis); *Sullivan v. Newburgh Enlarged Sch. Dist.*, 281 F.Supp.2d 689 (S.D.N.Y.2003).

a. *Failure to Promote Claim*

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Bush argues that Fordham denied her application for a Level 6 upgrade because of her race, alleging that Fordham "den[ied] her compensation, job titles and benefits equal to that of white employees." Claims of disparate treatment under Title VII are analyzed with the three-step burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 (2d Cir.2000) (failure to promote); *Woodman v. WWOR–TV, Inc.*, 411 F.3d 69, 76 (2d Cir.2005); *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 83 (2d Cir.1990) (dispa-

rate treatment); *Jetter v. Knothe Corp.*, 324 F.3d 73, 75 (2d Cir.2003) (retaliation). The plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Williams v. R.H. Donnelley Corp.*, 368 F.3d 123, 126 (2d Cir.2004). The establishment of a prima facie case creates a presumption of discriminatory animus that shifts the burden of production to the defendant to proffer a legitimate, nondiscriminatory business rationale to justify its adverse employment action. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817). If the defendant articulates such a rationale, "the presumption of discrimination drops out," *Roge v. NYP Holdings, Inc.*, 257 F.3d 164 (2d Cir.2001), and the plaintiff must be afforded "an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination," *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089. "Alternatively, a plaintiff may meet the burden by using a 'mixed-motives' analysis." *Morris v. N.Y. City Dep't of Sanitation*, 2003 WL 1739009, 2003 U.S. Dist. LEXIS 5146 (S.D.N.Y.2003); *see de la Cruz v. New York City Human Resources Admin. Dep't of Social Servs.*, 82 F.3d 16, 23 (2d Cir.1996), *cert. denied* 519 U.S. 805, 117 S.Ct. 45, 136 L.Ed.2d 9 (1996). Either way, the court at the summary judgment stage must "examine the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.' " *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir.2000) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). "In short, the ultimate burden rests with the plaintiff to offer evidence 'sufficient to support a reasonable inference that prohibited [race] discrimination occurred.' " *Woodman*, 411 F.3d at 76 (quoting *James v. New York Racing Ass'n*, 233 F.3d 149, 156 (2d Cir.2000)).

Bush has identified three separate instances where Fordham failed to promote her allegedly because of her race. The first instance was her May 2003 application for a Level 6 upgrade. The second instance was her November 2003 application for a Level 6 upgrade. Because Bush has not put forward any evidence that her qualifications for the upgrade changed between May and November 2003, the Court will treat the May and November applications together.

The third instance was her May 2004 application for the position of Legal Secretary, a Level 7 upgrade. Bush first alleged that denial of the Level 7 upgrade was discriminatory in her brief in opposition to the motion for summary judgment; this allegation was not made in Bush's complaint or in her EEOC charge and therefore should not be considered because nothing in either filing put Fordham on notice of this new allegation. "Although a complaint need not correctly plead every legal theory supporting the claim, at the very least, plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense. Because a failure to assert a claim until the last minute will inevitably prejudice the defendant, courts in this District have consistently ruled that it is 'inappropriate to raise new claims for the first time in submissions in opposition to summary judgment.' " *Beckman v. United States Postal Serv.*, 79 F.Supp.2d 394, 408 (S.D.N.Y.2000) (quoting *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 170 F.R.D. 111, 119 (S.D.N.Y.1997)) (citations

omitted).[8] Even assuming for the sake of argument that this claim was properly asserted, Bush has offered no evidence to support her assertion that she was eligible for promotion to Legal Secretary or that she otherwise possessed qualifications for the job. According to Fordham, the position of Legal Secretary was not a position open to bid by incumbent clerical employees and was only available to new hires. In this regard, the Union contract states, "A Level 7 for Legal Secretaries will be added to the salary ranges effective July 1, 2000. Only secretaries hired into the Legal Secretary position are subject to this provision." (Local 153 Contract art. XVIII § 8, Def. Ex. G.) Thus, the plain language of the contract requires that Level 7 employees be hired into a Level 7 position, not promoted from other clerical positions, and that only legal secretaries are eligible for Level 7. (Letter from Nicole Beckford to Plaintiff (May 12, 2004), Pl.Ex. L.); *see also Duse v. IBM,* 252 F.3d 151, 158 (2d Cir.2001) ("Whether a written contract is ambiguous is a question of law for the court. Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms and those terms may be the basis for summary judgment." (citation and internal quotation marks omitted)). Bush has submitted no evidence to support her contrary interpretation of the contract, nor has she submitted evidence that any similarly situated Level 5 secretaries were ever promoted to Level 7 positions. "Such a barren allegation cannot give rise to an inference of discrimination." *Rochester v. Blue Cross & Blue Shield,* No. 98. Civ. 2436(ILG), 2000 U.S. Dist. LEXIS 10550, 2000 WL 1052064, at *6 (E.D.N.Y. June 30, 2000) (declining to consider new facts related to plaintiff's discrimination claim where facts were raised for the first time at summary judgment and lacked support).

The Court now turns to consider the merits of Bush's allegations that the rejection of her applications for a Level 6 upgrade was discriminatory.

### i. *Prima Facie Case*

Bush may establish her prima facie case of discrimination for failure to promote by demonstrating that (1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she suffered an adverse employment action; and (4) the circumstances surrounding that action permit an inference of discrimination. *Williams,* 368 F.3d at 126 (2d Cir.2004) (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817). A plaintiff's burden in presenting prima facie evidence of discriminatory treatment is de minimis. *Abdu–Brisson,* 239 F.3d at 467.

As an African–American who was denied a promotion, Bush satisfies the first and third elements of the prima facie case. *See Mormol v. Costco Wholesale Corp.,* 364 F.3d 54, 57 (2d Cir.2004) (holding that failure to promote is an adverse employment action) (citing *Burlington Indus. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.")); *see also Wolf v. Board of Educ.,* No. 93 Civ. 6059(WHP),

---

8. For the same reasons, the Court dismisses any claim that Fordham's failure to promote her to the position of Assistant Director of Academic Programs at the law school—a position that required a law degree—in 2002 (Pl.

Opp'n 2.) Bush described this incident for the first time in her brief in opposition to the motion for summary judgment without specifically alleging that the failure to promote her to Assistant Director was discriminatory.

2000 U.S. Dist. LEXIS 257, 2000 WL 28157, at *3 (S.D.N.Y. Jan.14, 2000) ("[T]he failure to promote or to consider an employee for promotion clearly rises to the level of adverse employment decisions."). However, Bush has not met her de minimis burden to establish either that she was qualified for a Level 6 upgrade or that Fordham's decision not to upgrade her gives rise to an inference of discrimination.

 In the context of a promotion, the Second Circuit has held that "being 'qualified' refers to the criteria the employer has specified for the position." *Thornley v. Penton Publ'g, Inc.*, 104 F.3d 26, 29 (2d Cir.1997).[9] Moreover, "[a]bsent a showing by the plaintiff that the employer's demands were made in bad faith .... plaintiff is not entitled to get his or her case before a jury by contending that the demands of the employer were not reasonably related to the performance of the job." *Id.; see also Lanier v. IBM Corp.*, 319 F.Supp.2d 374, 387 (S.D.N.Y.2004) (finding that plaintiff could not establish prima facie case where plaintiff did not satisfy defendant's criteria and had not offered any evidence that criteria were developed in bad faith); *Bloomfield v. Banco Bilbao Vizcaya, S.A.*, No. 94 Civ. 0056(DAB), 1999 U.S. Dist. LEXIS 13286, 1999 WL 675966, at *6 (S.D.N.Y. Aug.31, 1999) (holding "absent a showing that the employer's criteria were made in bad faith, neither the Court nor a jury may second-guess the reasonableness of an employer's criteria for employment"). Thus, to make out a prima facie case that an employer's failure to promote the plaintiff was discriminatory, plaintiff "must show that she met the defendant's criteria for the position." *Williams*, 368 F.3d at 128 (2d Cir. 2004); *Lopez v. Orrick, Herrington, & Sutcliffe*, No. 97 Civ. 0357(SHS), 1998 WL 426795, 1998 U.S. Dist. LEXIS 11516, at *9 (S.D.N.Y. July 27, 1998) ("Summary judgment must be granted to an employer where the plaintiff employee fails to establish the qualifications prong of a prima facie case.").

The Union contract states that candidates for Level 6 "must have a minimum of 3 years of experience in a Level 5 position and must be reporting to a Dean or Director." (Local 153 Contract art. XVIII § 8, Def. Ex. G.) Consistent with the plain meaning of the language, Fordham has submitted evidence that it and the Union have long understood this provision to require that the employee report directly to a Dean of the University, not an Associate or Assistant Dean. (Cioffi Aff. ¶ 10.) Fordham further states that no employee reporting to an Associate Dean or Assistant Dean has ever received this upgrade. *(Id.)* Accordingly, Fordham claims that it denied Bush's application in part because she reported to an Associate Dean and thus did not meet this criteria for Level 6 status.

 Although Bush concedes that her title was Executive Secretary to Associate Dean Vali, she asserts that Dean Grimes was also her supervisor and thus she "report[ed] to a Dean or Director" within the meaning of the Union contract. (Pl. Dep. 55–57; Pl. Opp'n 2–3, 6, 12.) However, she provides no evidence to support her interpretation, which is contrary to the

---

**9.** In *Graham*, a case involving an allegation of discriminatory discharge, the court said it was "premature" to consider defendant's evidence at the prima facie stage. 230 F.3d at 41–42. However, in a failure-to-promote case, where the plaintiff must prove as part of her prima facie case that she satisfied the "criteria the employer has specified for the position," *Thornley*, 104 F.3d at 29, the court must necessarily examine the evidence that the defendant has forwarded of its criteria.

unambiguous terms of the Union contract. "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms and those terms may be the basis for summary judgment." *See Duse,* 252 F.3d at 158. Accordingly, plaintiff has failed to offer any evidence (other than her unsubstantiated allegations) that she possessed the minimum qualifications for a Level 6 upgrade. *See Williams,* 368 F.3d at 127 (finding that plaintiff failed to establish a prima facie case of retaliation where she failed to show that she was qualified for a promotion); *Gadsden v. Jones Lang Lasalle Ams., Inc.,* 210 F.Supp.2d 430, 442 (S.D.N.Y.2002) (same).

Even if Bush could establish that her interpretation of the Union contract was correct and that therefore she satisfied the criteria for Level 6 outlined in the Union contract, Fordham has presented substantial evidence that the Union contract contained merely the *minimum* criteria for Level 6 (Def. Ex. J; Cioffi Aff. ¶ 11), and that Bush failed to satisfy the additional criteria routinely used by Fordham to evaluate candidates. Candidates must demonstrate "indicia of management," which includes, among other things, supervising and training lower level clerical staff. (Def. Ex. J; Cioffi Aff. ¶ 11.) Bush did not supervise other employees, did not delegate work to other employees, and did not handle the volume of work required for Level 6 status. (Cioffi Aff. ¶¶ 11–12.) Moreover, Fordham has submitted evidence that Bush filed grievances with the Union and complained to Grimes because she believed that she was assigned tasks outside of her job description both before and after her request for an upgrade to Level 6 status in April 2003. (Pl. Dep. 127–31; Def. Exs. K, L.) These undisputed facts establish that Bush did not possess "indicia of management" required of Level 6 employees.

Bush contends that imposing additional requirements on Level 6 applicants is inconsistent with the plain language of the Union contract. (Pl. Dep. 146; Pl. Affirmation 3.) It is illogical, however, to read the contract as providing that every Level 5 secretary who reports to a dean is automatically promoted to Level 6 after three years. And Bush has proffered no evidence that might suggest that Union representatives or others agree with her interpretation of the contract. Thus, because Bush has failed to show that she was qualified for the Level 6 upgrade, she cannot make out a prima facie case that Fordham's decision to deny the upgrade was discriminatory. *See, e.g., Guglielmo v. Marchon Eyewear, Inc.,* No. 02 Civ. 5434(SLT), 2006 U.S. Dist. LEXIS 9146, 2006 WL 398617, at *10 (E.D.N.Y. Feb.15, 2006) (holding plaintiff's prima case failed where plaintiff had not satisfied defendant's criteria for promotion); *Gonzalez v. Connecticut,* 151 F.Supp.2d 174, 181 (D.Conn.2001) (same); *Alleyne v. Four Seasons Hotel–N.Y.,* No. 99 Civ. 3432(JGK), 2001 U.S. Dist. LEXIS 1503, 2001 WL 135770, at *10–*11 (S.D.N.Y. Feb.15, 2001) (same); *James v. Newsweek,* No. 96 Civ. 0393(LAP), 1999 U.S. Dist. LEXIS 15588, 1999 WL 796173, at *12–*13 (S.D.N.Y. Sept.30, 1999) (same).

Assuming, for the sake of argument, that Bush can establish that she satisfied Fordham's criteria for a Level 6 upgrade, she has not submitted any evidence that might raise an inference of discrimination. Absent direct evidence of Fordham's discriminatory intent, which is plainly lacking, Bush may satisfy this fourth element of her prima facie case by "showing that the employer subjected [her] to disparate treatment, that is, treated [her] less favorably than a similarly situated employee outside [her] protected

group." *Graham,* 230 F.3d at 39. To be "similarly situated," the individuals with whom Bush attempts to compare herself must be "similarly situated in all material respects." *Id.* (citing *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir.1992)). Their circumstances need not be identical, *see Lizardo v. Denny's, Inc.,* 270 F.3d 94, 101 (2d Cir.2001), but they must share a sufficient amount of significant employment characteristics to be considered similarly situated, *Quarless v. Bronx–Lebanon Hosp. Ctr.,* 228 F.Supp.2d 377, 383 (S.D.N.Y.2002). These characteristics include similarities in education, seniority, performance, and specific work duties. *See, e.g., Quarless,* 228 F.Supp.2d at 384. With respect to work duties, "the performance of some common tasks does not make jobs substantially equal when material differences also exist." *Coniglario v. Horace Mann Sch.,* No. 95 Civ. 3555(CSH), 2000 U.S. Dist. LEXIS 556, 2000 WL 45439, at *8 (S.D.N.Y. Jan.19, 2000).

 Bush acknowledged in her deposition that she was not aware of any Level 5 Caucasian employee who received an upgrade to Level 6. (Pl.Dep.96.) Instead, Bush argues that Kelly, a Caucasian employee, was similarly situated despite the fact that she was promoted from Level 5 to Administrative Assistant, not to Level 6. However, Bush was not similarly situated to Kelly in at least two material respects. First, at the time that Kelly was a Level 5 secretary—one year prior to Bush entering the office—Kelly had a much higher level of responsibility than other Level 5 secretaries. Fordham's undisputed evidence shows that Kelly delegated work to other clerical employees, managed the Dean's Office, regularly worked overtime, and was exposed to confidential personnel and labor matters. For these reasons, Grimes believed that Kelly had responsibilities and interests distinct from those of Union employees and believed that she should not be part of the clerical bargaining unit, and he requested her upgrade to the non-union position of Administrative Assistant. (Cioffi Aff. ¶¶ 16–17; Grimes Aff. ¶¶ 8–10.) In contrast, while the announcement describing the Level 5 Executive Secretary position for which Bush applied (Position 500021) states that the position "[s]upervises student workers," the announcement does not state that the position supervises or trains lower level clerical staff, nor does the announcement list any other management responsibilities. (Pl.Ex.I.) Bush herself did not delegate work to other clerical employees. (Cioffi Aff. ¶ 12) Thus, Bush's Level 5 position and Kelly's Level 5 position materially differed. *See Cooper v. Morgenthau,* No. 99 Civ. 11946(WHP), 2001 U.S. Dist. LEXIS 10904, 2001 WL 868003, at *7 (S.D.N.Y. July 31, 2001) (finding plaintiff was not similarly situated to comparator where their job descriptions differed). Second, the criteria for Kelly's promotion and the upgrade that Bush sought were materially different. Although Bush makes much of the alleged fact that she—like Kelly—reported to a dean, her assertion is irrelevant because reporting to a dean was not a criterion for the non-union position of Administrative Assistant. In other words, Kelly was not similarly situated with respect to the requirements for promotion. *See id.; Buchanan v. Conn. Transit, Inc.,* No. 98 Civ. 1145, 2000 WL 435546, at *3 (D.Conn. Mar. 10, 2000) (granting summary judgment because a supervisor and his subordinate were not similarly situated employees). For these reasons, the Court finds that Kelly was not similarly situated to Bush, and Bush thus has not established a prima facie case as to the fourth element of the *McDonnell Douglas* test.

ii. *Fordham's Business Justification and Plaintiff's Evidence of Discriminatory Intent*

 Even were the Court to conclude that Bush established her prima facie case, the result on defendant's summary judgment motion would be unchanged. The establishment of a prima facie case "creates a presumption that the employer unlawfully discriminated, and thus places the burden of production on the employer to proffer a nondiscriminatory reason for its action." *James v. New York Racing Ass'n*, 233 F.3d at 154 (citation omitted); *see also Mandell v. County of Suffolk*, 316 F.3d 368, 380 (2d Cir.2003). A defendant's burden has been characterized as "light," *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir.1998), and because it is a burden of "production, not persuasion; it 'can involve no credibility assessment,'" *Reeves*, 530 U.S. at 142, 120 S.Ct. 2097. "The employer need not *persuade* the court that it was motivated by the reason it provides; rather it must simply articulate an explanation that, if true, would connote lawful behavior." *Id.* (citation omitted). Here the Court finds that Fordham, by explaining that its decision not to promote Bush was based on its conclusion that she had failed to satisfy established requirements for Level 6 upgrades, has satisfied this step of the *McDonnell Douglas* test. At this juncture, then, the Court must determine whether on the basis of the entire record plaintiff could satisfy her "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against [her]." *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089.

As discussed above, Bush asserts without support that Fordham's requirement that Level 6 applicants possess "indicia of management" is inconsistent with the Union contract. Although "courts have afforded employers considerable latitude in selecting employment qualifications," employers may not develop criteria in bad faith or apply those criteria non-uniformly. *Jackson v. Univ. of New Haven*, 228 F.Supp.2d 156, 161–62 (D.Conn.2002) (granting summary judgment for employer where plaintiff did not satisfy defendant's criteria and did not offer evidence that defendant applied hiring criteria non-uniformly); *see also Sarmiento v. Queens Coll.*, 386 F.Supp.2d 93, 97–98 (E.D.N.Y. 2005) (examining whether employer applied qualifications uniformly under step two of *McDonnell Douglas's* burden-shifting framework after assuming that plaintiff had made out a prima facie case). Here there is no claim, and Bush has put forth no evidence, that Fordham developed the Level 6 requirements to exclude minority applicants from Level 6 positions, or that Fordham failed to apply the requirement that Level 6 employees supervise other clerical employees uniformly to African–Americans and others. Absent a showing that Fordham's criteria for Level 6 were developed in bad faith or applied inconsistently, Fordham's reasons for the criteria and for rejecting Bush's applications should be found legitimate.[10] *Jackson*, 228 F.Supp.2d at 162; *Lanier*, 319 F.Supp.2d at 387 (holding on motion for summary judgment that where plaintiff has not offered evidence that hiring criteria were developed in bad faith, defendant's reasons for the criteria should be

---

**10.** Fordham also notes that Beckford, the Human Resources Manager who evaluated and rejected Bush's requests for an upgrade, is African–American, undercutting any argument that Fordham's criteria were developed in bad faith. *Cf. Guglietta v. Meredith Corp.*, 301 F.Supp.2d 209, 216 (D.Conn.2004) (holding that where decisionmaker and plaintiff are both female, inference of gender discrimination is negated).

found legitimate); *see also Agonafer v. Rubin,* 35 F.Supp.2d 300, 304 (S.D.N.Y. 1998) (holding that an employer may decline to promote " 'on the basis of subjective business judgments, [or indeed] for any reason that is not discriminatory' " (quoting *Thornley,* 104 F.3d at 29)).

Nor does an examination of Fordham's action on other applications for upgrades during the same period raise an inference of discrimination. Pursuant to the Union contract, Fordham reviews requests by the Union for reclassification of employee salary levels on May 1 and November 1 of each year. (Def. 56.1 Statement ¶ 19.) During the May 2003 upgrade period, twenty-two Fordham employees applied to have their positions reclassified pursuant to the Union contract. Of the twenty-two applicants, ten were Caucasian (45%), seven were Hispanic (32%), and five were African–American (23%). Eighteen of the twenty-two applicants received upgrades in May 2003 and four were denied. Of the eighteen employees approved for upgrade in May 2003, eight were Caucasian (80% of Caucasian applicants for upgrade), six were Hispanic (86% of Hispanic applicants), and four were African–American (80% of African–American applicants). Bush was the only African–American employee whose request was denied. Of the twenty-two applicants for upgrade, four employees (two Caucasian, one Hispanic, and one African–American employee (Bush)) applied for upgrades from Level 5 to Level 6. Fordham denied all four applications. (Def. 56.1 Statement ¶¶ 20–25; Def. Ex. N.) In fact, in the two years preceding Bush's termination, only one employee was promoted to Level 6. That employee was Hispanic. (Cioffi Aff. ¶¶ 13–15; Close Reply Affirmation ¶ 6.)

Finally, Bush has submitted no sworn testimony, documentary evidence, or legal authority that would serve to raise an inference that Fordham's denial of her application for Level 6 status was in any way related to her race; she relies solely on her bald allegations to raise an inference of discriminatory intent. With an absence of any valid comparators and no evidence of racially discriminatory intent, no reasonable jury could find that Bush was not promoted because of discriminatory animus. Accordingly, Bush's claims alleging failure-to-promote and disparate treatment in promotion fail.

### b. *Hostile Work Environment Claim*

 Bush also forwards a hostile work environment claim under Title VII. In order to prevail on this claim, she must show that "the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *Alfano v. Costello,* 294 F.3d 365, 373 (2d Cir.2002) (quoting *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 149 (2d Cir.1997)); *see also Oncale v. Sundowner Offshore Servs.,* 523 U.S. 75, 78, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (stating that a hostile work environment is created "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment"); *Terry v. Ashcroft,* 336 F.3d 128, 148 (2d Cir.2003) (stating courts should consider "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." (internal quotation marks omitted)). This test has objective and subjective elements: "[T]he misconduct must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that envi-

ronment to be abusive." *Alfano,* 294 F.3d at 374 (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). In determining whether the plaintiff's environment was sufficiently hostile to support a claim under Title VII, a court must consider "the totality of circumstances," *Richardson v. New York State Dep't of Corr. Serv.,* 180 F.3d 426, 437 (2d Cir.1999), including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance," *Harris,* 510 U.S. at 23, 114 S.Ct. 367. "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Alfano,* 294 F.3d at 374 (quoting *Perry,* 115 F.3d at 149).

In addition, the Second Circuit has unambiguously stated that only conduct prompted by plaintiff's race or national origin contributes to a hostile work environment claim. *See Richardson,* 180 F.3d at 440; see also *Alfano,* 294 F.3d at 374 (cautioning that it is "important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination"). As such, a plaintiff must "demonstrate that she was subjected to the hostility because of her membership in a protected class." *Brennan v. Metropolitan Opera Ass'n Inc.,* 192 F.3d 310, 318 (2d Cir.1999).

Bush has alleged in a conclusory fashion that Kelly and Grimes harassed her without setting forth specific facts as to how their actions altered the conditions of her working environment or whether these actions were motivated by racial or national origin discrimination.[11] According to Bush, Kelly's hostility included "altering Plaintiff's time sheets; threaten[ing] to call security on Plaintiff for no reason; not giving Plaintiff her phone messages." (Compl.¶ 32.) She also alleges that Kelly inquired of her daughter at a Fordham outing, "Is your mother mean to you?" *(Id.* ¶ 30.) Such allegations, as a matter of law, do not amount to actionable harassment: The Supreme Court has stated clearly that the antidiscrimination laws are not to be viewed as a "general civility code." *See Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) ("We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment."). Bush's most serious allegations are that Kelly slammed doors in Bush's face and permitted her daughter to physically intimidate Bush by blocking Bush's path to Grimes's office. (Pl. Opp'n 5.) However, even if these

---

11. Plaintiff also alleges that, when she transferred to Fordham College in September 2002, her salary was reduced from the biweekly rate of $1,180.76 to $1,168.27 in violation of the collective bargaining agreement. (Local 153 Contract art. XI § 4, Def. Ex. G; see also *Employment Action Form,* Pl.Ex. Q.) Fordham claims that her pay was reduced to $1,180.28, a $0.48 difference per pay period, due to an inadvertent key punch error. (Mineo Aff. ¶ 4.) Plaintiff filed a grievance with the Union regarding the salary reduction on April 26, 2004 (Letter to Michael Goodwin from Pl., Pl.Ex. O), but has not presented evidence that she ever brought the matter to the attention of Fordham's human resources department. Nor has she presented any facts to suggest that the reduction was intended to harass or discriminate against her in violation of Title VII. Even if her salary had been reduced because of discriminatory motives, her claim is time-barred because she failed to include the allegation in her EEOC charges and the claim was not "reasonably related" to those charges. *See Alfano,* 294 F.3d at 381 (dismissing Title VII claim not included in EEOC charge).

events occurred as Bush has described—which is highly doubtful, given that she has not proffered a shred of evidence to counter Fordham's version of events—Bush has failed to proffer any evidence that Kelly's conduct was prompted by Bush's race. As discussed above, neither Bush nor the Union claimed that Kelly slammed the doors because she was motivated by discriminatory or retaliatory animus. (*See* Def. Ex. Q; Pl. Dep. 238–41.) Bush did allege in her e-mail to Grimes regarding the encounter with Kelly's daughter that Kelly's actions stemmed from Bush's complaint of discrimination (Def.Ex.W), but without any explanation as to why she believed this. In any event, these two alleged incidents, which occurred six months apart, are not "sufficiently continuous and concerted in order to be deemed pervasive." *Alfano*, 294 F.3d at 374; *see also Neratko v. Frank*, 31 F.Supp.2d 270, 284 (W.D.N.Y.1998) ("Personal animosity is not the equivalent of . . . discrimination and is not proscribed by Title VII. The plaintiff cannot turn a personal feud into a . . . discrimination case by accusation.") (quoting *McCollum v. Bolger*, 794 F.2d 602, 609–10 (11th Cir.1986), *cert. denied*, 479 U.S. 1034, 107 S.Ct. 883, 93 L.Ed.2d 836 (1987)).

Similarly, Bush has offered no evidence to support her allegation that Grimes harassed her on account of her race. Bush alleged in her complaint that Grimes harassed her by scheduling meetings without providing her advance notice, but when asked at her deposition whether Grimes's failure to notify her was on account of her race, she replied, "I don't believe I can answer that." (Pl.Dep.199.) Bush also alleges that Grimes allowed Kelly but not her to enter his office. (Compl.¶ 52.) Fordham denies this allegation, but notes that given the fact that Kelly was Dean Grimes's administrative assistant, he might reasonably grant her more access to his office than Bush without being motivated by racial discrimination. In addition, in her papers in opposition to summary judgment, Bush claims that Grimes retaliated against her through unspecified "verbal abuse" that included screaming, slamming his hand on the desk, ignoring her questions, and permitting Kelly to harass her. (Pl. Opp'n 5, 14.) However, Bush acknowledged at her deposition that Kelly also felt that Grimes could be a difficult manager. (Pl.Dep.152.) Even if the Court were to hold based on Bush's conclusory allegations that she had proffered facts sufficient to establish that the work environment was hostile or abusive, Bush must also "show that the working environment actually constituted discrimination . . . because of [race]." *Mack v. Port Auth.*, 225 F.Supp.2d 376, 387 (S.D.N.Y.2002) (quoting *Ricks v. Conde Nast Publications, Inc.*, 6 Fed.Appx. 74, 78 (2d Cir.2001) (citations omitted)); *see also Norris v. New York City Hous. Auth.*, No. 02 Civ. 6933(RJH), 2004 U.S. Dist. LEXIS 8619, 2004 WL 1087600, at *12 (S.D.N.Y. May 14, 2004) ("[R]udeness without any evidence of discriminatory intent does not constitute discrimination, and because disparate treatment of employees in the workplace is not sufficient evidence of discrimination if the two employees are not similarly situated."); *Katz v. Beth Isr. Med. Ctr.*, No. 95 Civ. 7183(AGS), 2001 U.S. Dist. LEXIS 29, 2001 WL 11064, at *14 (S.D.N.Y. Jan.4, 2001) ("Being yelled at, receiving unfair criticism, [and] receiving unfavorable schedules or work assignments . . . do not rise to the level of adverse employment actions."). Bush has not pointed to any direct or circumstantial evidence that Grimes was motivated by discrimination. Accordingly, the Court grants Fordham's motion for summary judgment on Bush's hostile work environment claim.

#### c. *Retaliation Claims*

Bush claims that Fordham retaliated against her for filing a charge of discrimination with the EEOC by taking disciplinary action against her. Specifically, Fordham issued her a written warning in January 2004 and suspended her for one day without pay for insubordination in July 2004, and issued her a written warning in July 2004 and suspended her for three days without pay in September 2004 for poor attendance.[12] Title VII's anti-retaliation provision forbids employer actions that "discriminate against" an employee because the employee has "opposed" a practice that Title VII forbids or has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." 42 U.S.C. § 2000e–3(a); *Burlington Northern & Santa Fe Ry. v. White*, — U.S. —, 126 S.Ct. 2405, 2410, 165 L.Ed.2d 345 (2006).

The *McDonnell Douglas* burden-shifting analysis used in claims of discrimination in violation of Title VII also applies to retaliation claims brought pursuant to Title VII. *Terry v. Ashcroft*, 336 F.3d at 141. To make out a prima facie case of retaliation, Bush must present sufficient evidence to permit a rational trier of fact to find that (1) she engaged in protected participation under Title VII; (2) Fordham knew of this activity; (3) Fordham took adverse action against Bush; and (4) "a causal connection exists between the protected activity and the adverse action, meaning that a retaliatory motive played a part in the adverse employment action." *See Cifra v. Gen. El. Co.*, 252 F.3d 205, 216 (2d Cir.2001) (internal quotation marks omitted); *see also Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir.2005); *Terry v. Ashcroft*, 336 F.3d at 141; *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir.1998). To prove that she engaged in

---

12. Bush did not allege in her 2004 EEOC charge that the written warning issued in January 2004 was retaliatory. Nor did she allege in her 2005 EEOC charge that the three-day suspension without pay in September 2004 was retaliatory. Nonetheless, the Court will consider the January warning and the September suspension with Bush's other claims of retaliation because they were part of the overall course of disciplinary action taken against Bush. *See Butts v. New York Dep't of Hous. Preservation & Dev.*, 990 F.2d 1397, 1402 (2d Cir.1993) ("Recognizing that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims she is suffering, we have allowed claims not raised in the charge to be brought in a civil action where the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" (quoting *Smith v. American President Lines, Ltd.*, 571 F.2d 102, 107 n. 10 (2d Cir.1978))); *see also Deravin v. Kerik*, 335 F.3d 195, 200–01 (2d Cir.2003) ("We have recognized, however, that claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency." (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir.2001) (internal quotation marks and citation omitted))).

With respect to Bush's termination, although she filed a charge with the EEOC for retaliation, Bush has never alleged in this lawsuit that her termination was retaliatory or discriminatory. Bush received a right-to-sue letter from the EEOC on March 31, 2005 yet has failed to amend her complaint to include her termination. Moreover, when asked in her deposition whether she was alleging that her termination was retaliatory, she refused to answer the questions. (Pl. Dep. 241–243; 256–257.) At this point, even if she were to assert a claim regarding her termination, such a claim would be time-barred because a private plaintiff must amend her complaint within ninety days of receipt of a right-to-sue letter from the EEOC to pursue Title VII claims in federal court. *See* 42 U.S.C. § 2000e–5(f)(1); *Sherlock*, 84 F.3d at 525. For all of these reasons, the Court does not consider here whether Bush's termination was retaliatory.

**416**

protected activity, Bush need not establish that the conduct she opposed was in fact a violation of Title VII. *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons,* 842 F.2d 590, 593 (2d Cir.1988); *see also Davis v. State Univ. of New York,* 802 F.2d 638, 642 (2d Cir.1986). However, she must demonstrate a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Sumner v. United States Postal Serv.,* 899 F.2d 203, 209 (2d Cir.1990).

■■■■ Bush engaged in protected activity of which Fordham was aware when she filed her EEOC charges and filed her lawsuit. *See Richardson,* 180 F.3d at 443; *Gallagher v. Delaney,* 139 F.3d 338, 349 (2d Cir.1998). She has also presented sufficient evidence to support the third element of a prima facie case of retaliation. In *White,* the Supreme Court said that adverse employment action is any employer action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." 126 S.Ct. at 2415. Adverse employment actions are not limited to "pecuniary emoluments," *Preda v. Nissho Iwai Amer. Corp.,* 128 F.3d 789, 791 (2d Cir.1997), and may include "negative evaluation letters," *Morris v. Lindau,* 196 F.3d 102, 110 (2d Cir.1999). Here, Fordham issued Bush two written warnings, suspended her for one day without pay in July 2004, and suspended her for three days without pay in September 2004. A reasonable trier of fact could conclude that these actions "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *See Satterfield v. United Parcel Serv., Inc.,* No. 00 Civ. 7190(MHD), 2003 U.S. Dist. LEXIS 17229, 2003 WL 22251314, at *10 (S.D.N.Y. Sept.30, 2003) (one-day suspension without pay falls within the Second Circuit's definition of "materially adverse" action); *see also Lovejoy-*

*Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 223–24 (2d Cir.2001) (holding that suspension for a week without pay is sufficient to constitute adverse employment action); *Page v. Connecticut Dep't of Pub. Safety,* 185 F.Supp.2d 149, 157 (D.Conn.2002) (suspension for two days without pay constitutes adverse employment action); *Simon v. N.Y.C. Bd. of Educ.,* No. 01 Civ. 6024(DGT), 2006 U.S. Dist. LEXIS 25326, 2006 WL 1210959, at *8 (E.D.N.Y.2006) (holding that although "many courts have held that written warnings alone do not constitute adverse employment actions unless they lead to a materially adverse change in terms and conditions of employment," letters that ultimately led to plaintiff's termination "should be viewed as adverse employment actions"); *Little v. NBC,* 210 F.Supp.2d 330, 387 (S.D.N.Y.2002) (holding that disciplinary letters can constitute adverse employment action).

■■■■ As for the fourth element of her prima facie case, Bush must present sufficient evidence to permit a rational trier of fact to find that the allegedly adverse employment actions were causally related to her engagement in protected activity. A causal connection may be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or ... (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Knight v. City of New York,* 303 F.Supp.2d 485, 496 (S.D.N.Y.2004).

As with her discrimination claims, direct evidence of retaliatory animus is plainly lacking. *See, e.g., Hunter v. St. Francis Hosp.,* 281 F.Supp.2d 534, 542 (E.D.N.Y. 2003) ("An inference of discrimination may be drawn from a showing that the employer criticized the plaintiff's performance in ethnically degrading terms, made invidious comments about others in the employee's

protected group, or treated employees not in the protected group more favorably." (citing *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir.1994))). In her deposition, Bush refused to answer any questions concerning her claim that Fordham retaliated against her for filing a charge of discrimination with the EEOC by taking disciplinary action against her. (Pl.Dep.20913, 22426, 22930, 23141, 24143.) Instead, she attempted to rest on language contained in her EEOC charges and the second amended complaint. Her conclusory allegation of retaliation is based on nothing more than the fact that Fordham took disciplinary action against her after she filed her first charge with the EEOC.

■ The Supreme Court has said that for a court to "accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case," the temporal proximity must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (citation omitted) (citing cases finding temporal proximity of three months and more to be insufficient). The Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman–Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554–555 & n. 5 (2d Cir.2001) (collecting cases). At least one district court has concluded that "a passage of two months between the protected activity and the adverse employment action seems to be the dividing line." *Cunningham v. Consol. Edison, Inc.*, No. 03 Civ. 3522(CPS), 2006 U.S. Dist. LEXIS 22482, 2006 WL 842914, at *19 (S.D.N.Y. Mar.28, 2006) (reviewing cases). Here,

Bush can make only a weak argument that her protected activity was temporally proximate to the disciplinary action taken against her: The first written warning in January 2004 occurred seven months after she filed her first EEOC charge on June 11, 2003, and the one-day suspension and written warning in July 2004 occurred more than one year after the first EEOC charge. However, the temporal proximity of just over one month between the filing of the second EEOC charge on July 30, 2004 and the three-day suspension on September 7, 2004 is arguably "very close." The Court therefore finds that Bush has established a prima facie case of discriminatory retaliation with respect to the September suspension.

■ Nevertheless, "the timing of events alone, even if sufficient to meet the plaintiff's *prima facie* burden, cannot defeat summary judgment in the face of defendant's proffered legitimate reason." *Vosatka v. Columbia Univ.*, No. 04 Civ. 2936(LAP), 2005 U.S. Dist. LEXIS 18139, 2005 WL 2044857, at *10 (S.D.N.Y. Aug.25, 2005) (quoting *Reilly v. Metro–North Commuter R.R. Co.*, No. 93 Civ. 7317(PKL), 1996 U.S. Dist. LEXIS 17061, 1996 WL 665620, at *14 (S.D.N.Y. Nov.15, 1996)) (dismissing retaliation claim); *see also Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985) (stating, in dismissing retaliation claim, "The summary judgment rule would be rendered sterile ... if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion.... To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases."); *Ali v. Mount Sinai Hosp.*, No. 92 Civ. 6129(JGK), 1996 U.S. Dist. LEXIS 8079, 1996 WL 325585, at *9 (S.D.N.Y. June 12, 1996) (dismissing retali-

ation claim because plaintiff "cannot avoid summary judgment by 'merely pointing to the inference of causality resulting from the sequence in time of the events'" (quoting *Chojar v. Levitt,* 773 F.Supp. 645, 655 (S.D.N.Y.1991))). Under *McDonnell Douglas,* once the plaintiff has established a prima facie case, the burden of production shifts to the defendant to proffer a legitimate, nondiscriminatory business rationale to justify its adverse employment action. Here, Fordham has provided unrebutted, legitimate, nondiscriminatory explanations for all of its disciplinary actions. It is undisputed that Bush walked out of a meeting with Grimes in January 2004, refused to attend a meeting regarding her absenteeism in July 2004, and called in sick twenty-three times between January 1 and July 19, 2004. As for the September 2004 disciplinary action, Fordham suspended Bush only after she called in sick without explanation on August 16 and September 2, despite having received a written warning that "continued abuse of the attendance policy and/or the general rules of conduct will be subject to more severe disciplinary action up to and including termination." (Def.Ex. T.) Bush has not presented any evidence that might suggest that Fordham's actions were a pretext for discrimination. The record thus cannot "support a reasonable inference that prohibited [race] discrimination occurred." *Woodman,* 411 F.3d at 76 (quoting *James v. New York Racing Ass'n,* 233 F.3d at 156). Accordingly, Fordham's motion for summary judgment is granted with respect to Bush's claim for retaliation.

### 3. *Bush's Remaining State Law Claims*

■ Because Bush no longer has any viable federal claim, her remaining state law claim belongs in state court. *See United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, ... the state claims should be dismissed as well."); *Sadallah v. City of Utica,* 383 F.3d 34, 39–40 (2d Cir.2004) (citing *Gibbs* in directing district court to enter judgment for defendants on federal law claims and to dismiss any state law claims without prejudice). Accordingly, Bush's remaining state law claim, for intentional infliction of emotional distress, is hereby dismissed without prejudice.

### CONCLUSION

For the reasons stated above, defendant's motion for summary judgment [41] is granted. The Clerk is requested to close this case.

SO ORDERED.